HENRY PAPER CO. v. COLUMBIA PAPER BAG CO.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1911.)

No. 996.

1. SALES (§ 128*)—CONTRACT—REPUDIATION.
   The fact that the buyer, under a contract for the manufacture and sale of paper, requested the seller to furnish more than the contract required, did not constitute a repudiation of the contract nor release the seller from its obligations thereunder.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 318–321; Dec. Dig. § 128.*]

2. EVIDENCE (§ 450*)—CONTRACT OF SALE—CONSTRUCTION—PAROL EVIDENCE.
   Defendant wrote plaintiff to enter order for 100 tons of 90 per cent. white sulphur bag paper at a specified price on specifications for one car load to be furnished as a sample for defendant's acceptance, and if satisfactory defendant to supply specifications for the balance of 100 tons to be shipped at defendant's order; that, if such quantity was satisfactory, defendant to have the privilege of taking about 2,000 tons during the

year from the contract date of that grade or of 80 per cent. grade at a stated lower price and 1,000 tons of 50 to 55 per cent. manilla bag at a lower price on same time and terms. The offer being accepted, defendant on the next day ordered 20 tons of 90 per cent. and 5 tons of 80 per cent., and 15 tons of manilla, asking for the manufacture and shipment of a sample roll of the 90 per cent. by express. This reaching defendant on September 3d, it ordered 60 tons of the 90 per cent., 15 tons of the 80 per cent., and 75 tons of the manilla, and on October 19th gave an additional order for 55 tons of 90 per cent. and 20 tons of 80 per cent. The paper ordered on August 16th reached defendant on September 18th and 27th. and the 80 and 90 per cent. was not received until subsequent to October 27th, the order of October 19th never having been filled, and the paper company on the 24th having withdrawn the quotation on the ground that the option had expired. *Held*, that parol evidence that the orders given by defendant for 80 tons of paper were regarded as having been given on the first 100 tons contracted for was not objectionable as offered to contradict or vary the contract; it being admissible to show the construction put on a term of the contract, which was not unambiguous, by the parties themselves.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082; Dec. Dig. § 450.*]

**3.** SALES (§ 101.*)—OPTION TO PURCHASE—REPUDIATION—GROUNDS.

Where a contract to purchase a sample 100 tons of paper of specified grades provided that, if the paper was satisfactory, the buyer should have the privilege of taking 2,000 tons of 90 or 80 per cent. paper at a specified price and 100 tons of another grade at a lower price, letters written by the buyer, after a portion only of such sample order had been delivered, expressing disappointment at the comparatively small amount of light-weight paper shipped on the sample order, and making other suggestions with reference to the manufacture, it being admitted that the seller had the right to fix the weights as it had done, did not show that the buyer was not satisfied with the sample order and was therefore not entitled to exercise its option to purchase the larger quantity specified, and did not authorize the seller to repudiate the contract on the ground that because of the dissatisfaction of the buyer the option had expired; the seller not being entitled to accept orders on the theory that the contract was still in force and then after an advance in the market to elect to treat those things as breaches of the contract and to declare a forfeiture therefor, where it had itself treated such acts as a compliance therewith.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 267, 268; Dec. Dig. § 101.*]

**4.** SET-OFF AND COUNTERCLAIM (§ 59*)—UNLIQUIDATED DAMAGES—AFFIRMATIVE JUDGMENT.

Where plaintiff, when sued for the price of certain paper, set up a claim for damages arising out of the seller's breach of the contract in failing to furnish the contract quantity, defendant's demand was an unliquidated claim for which an affirmative judgment could not be rendered under the Maryland rule prohibiting an affirmative judgment for unliquidated damages on a counterclaim, though such damages arise out of plaintiff's breaches of the contract sued on.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 130–132; Dec. Dig. § 59.*]

In Error to the Circuit Court of the United States for the District of Maryland, at Baltimore.

Action by the Henry Paper Company against the Columbia Paper Bag Company. From a judgment in favor of defendant, on a counterclaim, plaintiff brings error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

185 F.—30

William L. Marbury and Carroll T. Bond, for plaintiff in error.
Edwin G. Baetjer, for defendant in error.

Before PRITCHARD, Circuit Judge, and McDOWELL, and ROSE, District Judges.

ROSE, District Judge. The Henry Paper Company was the plaintiff below. It will be called the "Paper Company."

The defendant was the Columbia Paper Bag Company. It will be referred to as the "Bag Company."

The Paper Company is a New Hampshire corporation. It had its mills in that state. The Bag Company was incorporated under the laws of Maryland. Its factory was in Baltimore City. It there made bags in large quantities.

On the 15th of August, 1906, the Bag Company wrote the Paper Company:

"You may enter our order for 100 tons of 90% white sulphur bag paper at 272½¢ per cwt., f. o. b. cars Baltimore, less 3% cash 30 days, and give you specifications for one carload as a sample for our acceptance. If satisfactory, we will supply you with specifications for the balance of 100 tons, to be made and shipped on our order. It is further understood that if this one hundred tons is satisfactory we are to have the privilege of taking about 2,000 tons, to be taken during the year from date of contract in this grade or in 80% grade at 2.65 per cwt. Also 1,000 tons of 50 to 55% mla. bag at 2.40 per cwt., same time and terms. Paper to be basis 28 lb. and heavier. We will also give you specifications for one car of the manila bag as a sample for our acceptance."

This offer was at once accepted by the Paper Company.

For brevity the white bag paper 90 per cent. sulphite will be spoken of as the 90, the 80 per cent. sulphite as the 80, the manilla 50 to 55 per cent. sulphite as the manila.

On the next day, August 16th, the Bag Company ordered 20 tons of 90, 5 tons of 80, and 15 tons of manilla. At the request of the Bag Company, the Paper Company, so soon as the paper was manufactured under these orders, sent by express to it a sample specimen roll of 90. It reached the latter September 3d. On that day the Bag Company ordered 60 tons of 90, 15 tons of 80, and 75 tons of manilla.

On the 19th of October the Bag Company gave an additional order for 55 tons of 90 and 20 tons of 80.

The paper ordered August 16th reached the Bag Company September 8th. The manilla ordered September 3d arrived in Baltimore at varying dates between September 19th and 27th; the 80 and 90 on October 23d and 24th, although it apparently was not received by the Bag Company until subsequent to October 27th. The Bag Company paid for the paper ordered August 16th. The order sent October 19th was never filled.

On October 24th the Paper Company wrote the Bag Company:

"We hereby withdraw the quotation made you * * * August 15th giving you an option on several hundred tons of Bag paper. According to the terms of this agreement, we think your option has expired, and we do not think we would care to make the paper which the option provides for."

The Bag Company denied the right of the Paper Company to terminate the contract. Other correspondence followed. Neither party

would recede from the position it had taken. The Bag Company refused to pay for the balance of the paper already delivered so long as the Paper Company did not fill the orders given it. Finally, the Bag Company notified the Paper Company that it would buy paper elsewhere and would hold it liable for the extra cost. The Paper Company brought suit in assumpsit for $6,652.59 for paper sold and delivered. The Bag Company pleaded the general issue and set up a counterclaim in the form of a third plea. The counterclaim alleged that the Paper Company was indebted to the Bag Company in an amount greater than the Paper Company's claim for money payable upon the common counts and upon a special count. The special count set forth the contract between the parties. It alleged that the Bag Company gave the Paper Company, in accordance with said agreement, orders and specifications for 100 tons of white bag paper first mentioned in said contract and also specifications for manilla paper, as samples for its acceptance, as provided for in said contract; that the Bag Company duly performed all of its obligations under the said contract; but that the Paper Company, before the delivery of the samples and before a sufficient time had elapsed to enable the Bag Company to judge of the character and quality of said paper, refused to deliver any portion of said lot of 2,000 tons or of said lot of 1,000 tons in accordance with said contract, and renounced and repudiated said contract and all of its (the Paper Company's) obligations thereunder. The Bag Company claimed $30,000. The jury found that on the Paper Company's claim the Bag Company was indebted to the amount of $6,652.59, and that on the Bag Company's counterclaim the Paper Company was indebted in the sum of $11,652.59. Their verdict was in favor of the Bag Company for the difference, $5,000.

The Paper Company in its 18 assignments of error in substance says that the Bag Company was not entitled to any damages for the failure and refusal of the Paper Company to deliver more paper; and, second, that the jury should not have been allowed in any event to return an affirmative verdict for the Bag Company because the damages claimed by it were in their nature unliquidated. These contentions will be considered in the order in which they have been stated.

The Paper Company claims that the contract meant that, if the first sample car load of 90 was satisfactory to the Bag Company, the latter was required to furnish at one time the specifications for 80 tons, the balance of the 100 tons of 90 mentioned in the agreement. Under this construction of the contract, the Paper Company says that the orders of September 3d for 60 tons and October 19th for 55 tons of such paper were a repudiation of the contract by the Bag Company. We see no reason to put so extremely technical a construction upon an ordinary business agreement. The Paper Company, when it received the order of September 3d for 60 tons of 90 paper, did not say that such order was a breach of the contract. On the other hand, it thanked the Bag Company for it and said it would probably be able to begin work upon it about the middle of the then next week. The subsequent order for 55 tons was sent before any of the 60 tons ordered September 3d reached Baltimore. It was a question for the jury whether there had been any unreasonable delay by the Bag Company

in ordering the entire hundred tons. It is familiar law that, if a man offers to sell 100 tons, and the person to whom the offer is made answers that he will take 155 tons, no contract is made. There has never been a meeting of the minds. The authorities in support of this simple proposition of law are much relied on by the Paper Company. In our judgment they have nothing whatever to do with the case at bar. The contract was made August 15th. If the Bag Company was not entitled to demand the delivery of anything more than 100 tons of 90 before it had actually received those hundred tons and found them satisfactory, the Paper Company had the right, when it received the order of October 19th, to say:

"We will furnish you only the 20 tons remaining of the hundred tons. Your right to ask for more than those 20 tons does not arise until you have received 100 tons and found them satisfactory."

Of course the Paper Company might, if it had seen fit, have shipped the whole 75 tons. It had its option to do either the one thing or the other. The fact that one party to the contract asks another to do more than the contract requires the other to do is not in itself a repudiation of the contract, nor does it release the other from its obligations under it. In this view of the contract it is almost immaterial to consider whether the orders given August 16th for 5 tons of 80 and September 3d for 15 tons of 80 were not considered by the parties as the equivalent of orders for like quantity of 90. If they were, the hundred tons were ordered as early as they possibly could have been. The larger part of that quantity had not been delivered when the Paper Company undertook to repudiate the contract. The agreement itself indicated that it was immaterial whether the Bag Company took 80 or 90 paper. It is true it spoke of the first hundred tons as 90 paper; but there was an express provision that the subsequent 2,000 tons might be taken in either 90 or 80. Under those circumstances, if the parties themselves assumed that orders for 80 were equivalent to the orders for 90, the Paper Company would be estopped by every principle of fair dealing from afterwards repudiating the contract because the Bag Company had ordered 20 of the hundred tons in 80 instead of ordering the whole in 90. The president of the Paper Company himself testified that his company regarded the orders for 80 as having been given upon the first hundred tons specified in the contract. We find no error in the admission of such testimony. Such evidence was not offered for the purpose of contradicting or varying the contract, nor could it have any such effect. It was merely evidence of the construction put by both parties upon a term of the contract which in itself was far from being unambiguous. It at all events was admissible as showing that the Paper Company had waived any right it otherwise might have had to enforce a forfeiture because of the Bag Company's failure to order all of the balance at one time in 90.

The Paper Company contends that the right of the Bag Company to exercise the option of taking 3,000 tons of paper was expressly conditioned upon the first hundred tons being satisfactory. It says the first hundred tons were not satisfactory. At the time the Paper Company refused further performance under the contract, the first

hundred tons had not actually been received by the Bag Company. It had not had an opportunity to say whether they were or were not satisfactory. It had received 20 tons of 90 and 5 tons of 80, had used them, and had paid for them. After using them it had ordered 55 tons of 90 and 20 tons of 80. These things, standing by themselves, would ordinarily be strong evidence that the paper thus far received had been satisfactory. The Paper Company says, however, that the Bag Company in a letter of September 8, 1906, expressed its dissatisfaction. In that letter, written after the paper ordered August 16th and received September 8th had been used, the Bag Company said:

"We find there are several details regarding the running of your paper that should have prompt attention. The most important is variance in basis weights. Some of the paper supposed to be run on 35 lb. basis varying anywhere from 30 lb. to 36 lb. You will realize this is too much irregularity. * * * We think possibly same has been caused by your stock not feeding uniformly or regularly. Please give this matter your prompt attention in further running of our paper. We also find numerous rolls stenciled incorrectly, which causes trouble and annoyance. Furthermore, some of the plugs you are using are too small for the diameter of the hole in your rolls, in consequence plugs do not fit tightly, and when handling paper, plugs fall out of the rolls. We find, further, that for our requirements we would like to have your white sheet made harder as well as the Manilla."

The letter then closed with the request to the Paper Company that its Mr. Henry should visit the Bag Company and see samples of the paper run. It was said that the best results would follow and he could ascertain promptly the reason for any irregularities and doubtless have the same remedied without any delay. "His visiting us, therefore, at this particular time will result in being materially beneficial to us both." Mr. Henry himself was not able to go to Baltimore, but a Mr. Greenleaf came in his place.

In a letter of October 4th, written after Mr. Greenleaf's visit, the Paper Company said:

"We shall take great pains with this order, keeping in mind all the small deficiencies in last shipment, and trust this will meet with your entire satisfaction."

In the order of the 19th of October, upon or shortly after the receipt of which the Paper Company put an end to the contract so far as it was able so to do, the Bag Company, after stating that the balance of the order of September 3d had not yet been received, said:

"However, this paper should now reach us by next week. Upon receipt, if paper runs satisfactory for our requirements, we will then be ready to take up contract with you for our supply, in accordance with our agreement. We assume, however, as Mr. Greenleaf assured us, since you now know exactly what we want, you would have no difficulty in making slight changes in running your paper, to have same best suitable for our requirements."

This letter may justify the contention of the Paper Company that up to October 19th the Bag Company had never expressed its satisfaction with the first hundred tons. It, however, quite as clearly showed that the latter company had not yet expressed its dissatisfaction with them. In point of fact it had received only a portion of the hundred tons and was waiting the delivery of the balance. Until that balance was delivered the Paper Company had no right to insist that the Bag

Company should either declare its satisfaction or dissatisfaction. The Paper Company may well have been entitled to refuse to fill the orders given October 19th until after all the first hundred tons had reached the Bag Company and the latter had accepted the same as satisfactory. It did not confine itself to postponing the filling of the orders of October 19th until such event had occurred. It announced that the contract was at an end. We can see no justification for this position. Any instruction to that effect to the jury would have been error. The correspondence in evidence shows that before October 24th not one word of complaint was made by the Paper Company as to the way in which the orders were coming in from the Bag Company except that in the letter of September 7th it said:

"We are a little disappointed at the comparatively small amount of light weight paper under 30 lb. and we sincerely hope that the orders will not continue with this proportion of light weight paper. Our machines are large and we cannot make these light weight papers to advantage."

As the witnesses for the Paper Company themselves testified, this expression of disappointment had no reference to the question of whether some or all of the paper was to be 80 or 90. The proportion of sulphite had nothing to do with the weights. The Paper Company's witnesses who testified in this matter expressly admitted that the Bag Company, under the contract, had the right to fix the weights in the manner that it had done. The remark in the letter was simply an expression of the desire on the part of the Paper Company that the Bag Company should, so far as its interests would permit, bear in mind that it was more convenient to the Paper Company to furnish certain weights than others. The letter which repudiated the contract gave no other reason than that the option had expired. It is in evidence that about October 20th, four days before the letter of repudiation was written, there had been an advance of about $5 a ton in the market price of paper. The jury found that the refusal of the Paper Company to perform the contract had cost the Bag Company $11,652.59. It was not open to the Paper Company to receive, without objection from the Bag Company, the orders which had been given to it, to treat the contract as still in force and then when the price advanced so greatly to notify the Bag Company that those things which it itself had treated as compliances with the contract were breaches of it, and to declare a forfeiture which would transfer more than $11,000 from the Bag Company's pockets to its own. The court below was right in refusing to instruct the jury that they could make no allowance to the Bag Company for the refusal of the Paper Company to deliver the 3,000 tons of paper which by the contract the Bag Company had the option of demanding from the Paper Company and which the correspondence shows it did demand.

There remains for consideration the Paper Company's contention that it was error in the court below to instruct the jury that they might find an affirmative judgment for the Bag Company upon its counterclaim. For the reasons set forth fully in our opinion in the case of Norwood Paper Company v. Columbia Paper Bag Company (decided at this term) 185 Fed. 454, we are of opinion that the demands of the Bag Company set forth in this counterclaim were unliq-

uidated in their nature, and that in Maryland an affirmative judgment for unliquidated damages cannot be given in favor of a defendant even when those damages arise out of the plaintiff's breaches of the very contract upon which the plaintiff has brought suit.

The judgment below must therefore be reversed.