## JONES v. UNITED STATES.

### No. 11980.

Circuit Court of Appeals, Fifth Circuit.

Dec. 4, 1947.

James H. Martin, of Dallas, Tex., for appellant.

William Cantrell, Jr., of Dallas, Tex., Sp. Asst. to U.S. Atty., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Convicted on four counts of an indictment charging him with wilfully attempting to defeat and evade, in violation of 26 U.S.C.A.Int. Rev. Code, § 145(b), income taxes for the years 1942 and 1943,[1] defendant has appealed. Earnestly insisting that, upon the undisputed evidence,[2] no case was made out against him and a verdict should have been instructed in his favor, he is here urging that the judgment should be reversed and the cause dismissed. In the

---

[1] From 1935 to 1945, appellant was Assistant United States Attorney for the Northern District of Texas, under Clyde O. Eastus, the United States District Attorney, and his law partner under the firm name of Eastus & Jones. This firm, in addition to their official duties, with the approval of the Attorney General, engaged in the private practice of law.

Beginning in April, 1942, and continuing until May, 1943, the firm represented the A. A. A. Air Conditioning and Manufacturing Co. at a retainer of $1000.00 a month, and received $8848.00 in 1942 and $5000.00 in 1943.

In his original returns for the years 1942 and 1943, appellant omitted the payments so received, reporting all other income. In 1945 he made a supplemental return which reported not only his one-half but the whole of those sums. The prosecution charged that the omission was wilful and made with an attempt to defeat and evade the income tax. The defendant asserted that it was made openly and honestly and with no intent to evade.

[2] There was no substantial conflict in the evidence. Defendant admitted that he had received the money and that he had not returned it until 1945. He testified that he then returned the whole instead of his half of it because he was thrown into a state of panic and excitement by a scene with Eastus, his partner, in which Eastus, who had apparently gone crazy, had denied any connection with the business of the A. A. A. Co. and threatened to prosecute him for not returning all of it; that, having no record of the distribution of the money, he had declared all of it, though he later realized that such a declaration was a mistake and might be taken as a damaging admission.

He testified, too, that he had never at any time intended or attempted to evade or defeat the tax and that he is now overpaid in the sum of approximately $2100.

Testifying specifically as to the reasons why he did not return the money in 1942 and 1943, he testified: that this was because the client who had paid it had a sub-contract with persons dealing with the government; that the client thought it would be renegotiated and had advised defendant that if it had to pay back any money it had received on account of the contract, "We are going to have to re-adjust your contract with us, the $1000 we paid you"; that he agreed with the client that the salary would be readjusted in proportion to the readjustment of the renegotiation; that the money being thus restricted, he decided to wait until after the renegotiation had been made and then file an amended return accordingly; that on Feb. 18, 1943, he had discussed this situation with both Mr. Thomas, the Collector of Internal Revenue, and Mr. S. L. Mayo, his deputy; that in advising with them, believing that the renegotiation would be over in a short time, he had secured an extension to file the original return; but that renegotiations were not concluded within the time of the extension, in fact were not concluded until 1944.

The Collector being dead at the time of the trial, his testimony was not available, but Mr. Mayo, the deputy, testified that Jones had talked with their office with reference to the renegotiation act, and the desirability of having an extension of time for filing his 1942 return. "We discussed the progress of renegotiation for one of Mr. Jones' clients in connection with which he had some difficulty in determining whether his fees, the amounts received by him, were fixed fees or retainers, or advancements on fees, and he thought that the renegotiation matter in mind would be settled within a matter of a month or so, or two or three months, and if he could have an extension he could file a complete return."

It was shown that though Eastus had denied any interest in the fees involved, he was himself, in 1947, indicted, charged with attempting to evade the taxes on one-half of them.

alternative, he as earnestly insists that if the evidence did make out a case for the jury, the trial was unfair and not in accordance with law in that it was attended with such and so many prejudicial errors in the offering and admission of evidence, including the cross examination of defendant, and in respect of the charge given and the special instructions refused,[3] that the judgment must be reversed and the cause remanded for trial anew.

While we cannot agree with appellant that the evidence demanded the direction of a verdict in his favor, we do agree with him that the trial was attended with errors resulting so greatly to his prejudice that the judgment must be reversed and the cause remanded for trial anew.

Under the circumstances of the case, including: defendant's position as assistant to Eastus in the office of the United States Attorney and his law partner; the involvement of Eastus' office as United States Attorney in a general investigation; the frenzied outbursts and actions of Eastus, as testified to, together with the defendant's admission that he had received the fees and had not returned them; it was of the greatest importance to a just and fair trial that defendant be protected from prejudice arising out of other matters not germane to the trial and that his defenses, his reasons for not returning the income until 1945 and for the other things that he had done, be fully and fairly submitted to the jury. It was particularly important that he be tried not on general principles as to whether he was an unworthy character but upon specific instructions applicable to the law and the facts of the case on trial so that the jury could reach a fair and correct determination as to whether he was or was not proven guilty of the crime charged.

Instead of being tried in this way, the prosecution was allowed, without adequate check or curative action, to bring into the cause collateral matters which they deemed would be, and which were, damaging to defendant. In addition, the judge, instead of instructing the jury in terms precisely appropriate, in the light of the governing law, to the offense charged, gave a charge which wholly failed to do this, and also refused to give defendant's requested instructions in which his contentions and defenses were carefully and, in substance, correctly set out.

In the Spies case,[4] the Supreme Court, pointing out with admirable clarity and correctness the nature of the accusation pressed in this case and of the evidence required to establish guilt of it, has left in no doubt the right of a defendant so charged to have his defenses clearly and fairly put. Definitely settling that the mere failure to return income and pay the tax on it, though the taxpayer knew that it was due, would not constitute the offense of wilfully attempting to defeat and evade the income tax, and stating that something more than this must be shown, the court said: "By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal."

It said, too: "We think a defendant is entitled to a charge which will point out the necessity for such an inference of willful attempt to defeat or evade tax from some

---

[3] These instructions were adapted to the special circumstances and exigencies of the case, particularly the admitted fact that the fees were received and were not returned until 1945, when the supplemental return was filed under Eastus' violent threats of prosecution. They carefully and correctly submitted to the jury the contentions and defenses as applied to the facts of the case which the general charge wholly failed to do.

It will serve no useful purpose to set any of these charges out. It is sufficient to say that while some of them are repetitious and therefore all need not have been given, some of them, or the equivalent, should have been. This is particularly the case with charges Nos. 1, 3, 6, 7, 9 and 10.

[4] Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 368, 87 L.Ed. 418.

proof in the case other than that necessary to make out the misdemeanors; and if the evidence fails to afford such an inference, the defendant should be acquitted."

In the light of these pronouncements, it is quite plain that the theory on which the cause was tried below, that defendant's failure to return the income, knowing that it was due, of itself made out a case which he was required to rebut, was a wholly incorrect one and that the judgment must be reversed and the cause remanded for further and not inconsistent proceedings.

Reversed and remanded.