**Harry H. BLUMBERG, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15146.**

United States Court of Appeals
Fifth Circuit.

May 13, 1955.

Claude Pepper, Arthur B. Cunningham, Philip T. Weinstein, Miami, Fla., Sidney O. Raphael, New York City, for appellant.

Vernon W. Evans, Jr., Asst. U. S. Atty., Tampa, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, John H. Mitchell, Richard B. Buhrman, Sp. Assts. to Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

Convicted of willfully attempting to defeat and evade federal income taxes owing for the calendar years 1946 and 1947, in violation of Section 145(b), 26 U.S.C., defendant, appealing from the judgment imposing a fine of $20,000 and an imprisonment of three years, is here insisting that the trial was attended with prejudicial error and the judgment may not stand.

The government did not rely in this case upon the net worth and expenditures method of proof, and the defendant did not below, he does not here, dispute the

fact that for the years in question he did not report the income which the government witnesses testified was received by him in those years and not reported. On the contrary, conceding that there were omissions and that he is civilly liable for the deficiencies caused thereby, he defended below and defends here on the ground that the omissions were not willful, and he was, therefore, not guilty of the crimes charged.[1]

In support of his insistence that the judgment must be reversed for the errors assigned, appellant presents six questions for our decision.[2] For the reasons hereafter stated as briefly as may be as to each, we are of the clear opinion: that the first, second, fourth and fifth questions should be answered in the negative, and of the equally clear opinion that the third and sixth questions should be answered in the affirmative; and that these errors were greatly prejudicial and require a reversal.

While appellant has briefed with thoroughness and presented with vigor and apparent confidence each question raised, he has devoted a larger portion

1. This is how appellant states the matter in his brief:

"The evidence upon which the appellant was convicted consisted of proof of the receipt by the appellant in 1946 and 1947 of certain monies from the sale of fruit and for the rental of property, which monies had not been reported as income in his 1946 and 1947 income tax returns and/or those of his wife for the same years. The returns themselves were prepared by a firm of public accountants upon information submitted by appellant's bookkeeper.

"The appellant's defense was that he had never, at any time, intended to defeat or evade his income taxes for the years in question; that he thought that he had given a deposit slip or other memorandum of all payment of money to his bookkeeper; that he had hired outside accountants to check the work of his bookkeeper; that no entries had been made in these books by appellant; that not one witness, including appellant's bookkeeper and accountants, had ever been told to hide, conceal, falsify or omit any of appellant's financial transactions; that the use of cash was customary in appellant's type of business; that appellant's bookkeeper and accountants, by their own admissions, made numerous errors in the appellant's books; that appellant's bookkeeper had actual knowledge of certain receipts of money which she had not entered into the books of appellant in the belief that such receipts were being reported directly to appellant's accountants; and that appellant's bookkeeper would not have known how to enter a cashed check on the books of the appellant."

2. "First Question: Did the Court err in holding that appellant's books and records had not been secured from him in violation of his rights under Amendments IV and V to the Constitution?"

"Second Question: Where the trial court admitted conflicting evidence as to whether or not appellant's books and records had been obtained from him in violation of his constitutional rights, did the trial court err in refusing to give the jury an appropriate instruction, when requested by appellant, permitting the jury to reject any evidence found to be so obtained?"

"Third Question: In a trial for the felony of tax evasion, where the government stated that it would rely upon the specific omissions theory of proof in establishing its case, was it error for the trial court (1) to admit evidence of a peculiarly prejudicial and inflammatory nature which showed only expenditures, and then (2) to refuse to instruct the jury upon appellant's theory, supported by adequate evidence, that such expenditures were made from prior accumulated capital rather than from current income?"

"Fourth Question: Did the trial court err in refusing to allow an expert witness—who had heard all of the evidence adduced at the trial, and who had been appellant's accountant prior to and subsequent to the years charged—to testify as to the accounting services which had been rendered to the appellant during the years charged?"

"Fifth Question: Did the trial court err in unduly restricting appellant's counsel in his cross examination of the government agent who was chief prosecution witness?"

"Sixth Question: Did the trial court err (1) by participating excessively during the trial of the case in a manner which was prejudicial to the appellant, and (2) by interrupting one of appellant's counsel during the close of his summation to the jury and erroneously attributing to such counsel a mis-statement of a material fact?"

of his brief to a discussion of the first, second and third questions, presenting the claimed errors in: (1) holding that appellant's books and records had not been secured from him in violation of his rights under the Fourth and Fifth Amendments; (2) not submitting to the jury under an appropriate instruction, whether they were so secured; and (3) admitting irrelevant but highly prejudicial evidence of expenditures and the refusal of special charges made necessary thereby.

■■■ We take up the errors presented by the first and second questions to say that we agree with counsel's general propositions, that compulsory production of a taxpayer's books and records for the purpose of use in a criminal prosecution would be violative of constitutional protection against self incrimination, and have many times said so. Cf. White v. U. S., 5 Cir., 194 F.2d 215. We are convinced, however, that the record, including the testimony of the defendant himself, contains no evidence supporting the claim made on this appeal, that the examinations made of him, his books and records were conducted without his consent, and the books and records themselves were obtained from him not voluntarily but by coercion. On the contrary, we think the record is inconsistent with any other theory than that the defendant voluntarily, indeed without reservations of any kind, discussed the matter of his tax liability frankly and fully with the government agents in an effort to reach an agreement as to, and obtain a settlement of that liability.

It is true that there was no express disclosure made that a purpose in obtaining the evidence was to proceed criminally against him. On the other hand, though defendant had undoubtedly hoped, and may have believed, that no criminal prosecution was intended, there was no representation made to him that the information sought was only for purposes of settling his civil liability. Under these circumstances, we think: that there was no obligation on the agents to inform him that the matters inquired about might be used in a criminal proceeding; that it was no breach of his constitutional rights not to so "inform him" and that the matters propounded as error under this question are not such.

■■ Passing the third question for the moment and taking up the fourth, the claimed error in refusing to allow an expert witness to give his opinion as to the character of the accounting services which had been rendered to the appellant during the years in question, we think little need be said about it other than that if the exclusion of the proffered testimony was error, it did not deprive the defendant of substantial evidence making the action prejudicial, and, in the second place, we think the court was correct in ruling that the matter, on which the opinion of the witness was tendered, the quality of the accounting services furnished to appellant during the two years, was not a proper matter for opinion evidence.

When it comes to the fifth question, counsel's statement and argument thereon make it clear that the matters presented under it are more relevant to the general claims of error under the sixth question, the undue intervention of the court in the course of the trial and the prejudice to the defendant arising thereout, than to any particular benefit, of which the claimed restrictions on the particular cross examination had deprived the defendant.

■ Referring, therefore, to the sixth question, so much of the discussion under the fifth as properly relates to it, and considering the fifth question only as a complaint that defendant was deprived of particular information, we do not believe that a sufficient showing is made of a truly harmful result in the sense of depriving defendant of information to which he was entitled. We do think, though, that treating the interruptions dealt with as matter in point under the sixth general question, they do tend to support the complaint there made.

■ Coming now to the third question, whether the admission, over defend-

ant's objection, that it was not material to the theory on which the case was tried, of evidence having to do with moneys taken to New York by defendant's wife and with large expenditures made by them in launching an elaborate and expensive wedding party in a New York hotel to fitly celebrate the marriage of their daughter and the son of a prominent New York banker, was erroneous and prejudicial, we have no hesitancy in saying that it was, and that the erroneous admission was emphasized, exaggerated and made greatly more prejudicial[3] by the refusal of the court to give defendant's requested charges Nos. 15 and 16, or some similar charge.

The government's attempted avoidance of the error of admitting this highly prejudicial evidence by the statement that the evidence was not offered to prove that these expenditures were of money which had not been reported by defendant or that they represented the concealment or evasion of income tax on income over and above the amounts testified to and admitted by the defendant as proper deficiencies, but that they were admissible on the issue of willful intent, does not mitigate, indeed it greatly aggravates the error and resultant injury.

Under the theory upon which the case was tried, that specifically accounted for income had not been reported, a theory which the defendant himself conceded to be true, no legitimate purpose could have been served by the proof that the defendant's wife took to New York in a hand satchel $30,000 in cash and deposited part of it in the bank of the man whose son was marrying her daughter, and that they had a tremendous wedding in one of the big hotels in the town at the cost of many thousand dollars. With that evidence before the jury, and no corrective charge given in respect of it, there was no possibility of defendant's securing an unprejudiced consideration by the jury of his claim that the omissions were due to oversight rather than intention. In addition, with no instruction given them in the matter, the jury is bound to have thought that this money was additional income which had been concealed and not reported.

■ The government points, as precluding that conclusion, to a statement in the record made by it, that it was not claiming that this was additional income because it couldn't prove it. This statement, however, when taken in connection with the argument of the United States Attorney about the wedding and the money spent,[4] made the matter more greatly prejudicial because the jury, without adequate instruction, could well have taken it upon themselves to say, "Well, whether the government can prove

---

3. Hartman v. United States, 8 Cir., 215 F.2d 386, and our cases of Jones v. United States, 5 Cir., 164 F.2d 398, and Ford v. United States, 5 Cir., 210 F.2d 313.

4. "Now in regard to this wedding up in New York. A man is entitled to have any kind of a wedding he wants to for his daughter. He can spend $8500 or $85,000. That's his business. But it no longer remains his business when he has to do it by committing fraud on his goverment, because those were all concealed transactions; carrying currency in a bag; that was concealed for a purpose, because he didn't want anybody to know that he had that money. Now, if he spent $8500 on a wedding, or, it don't make any difference what he spent, but it was money that was income that should have been reported on his books

from all the reasonable inferences that can be drawn from the evidence. The reason it was introduced in evidence here became material because it was paid out of the New York bank account. The New York bank account was admitted in evidence as showing large dealings in large sums of currency with no explanation of its source, so it was admissible in evidence. Then the hotel bill at the Waldorf Astoria, the wedding party bill was admitted in evidence because it showed on its face that they had received $1000 and $8000 payments, and on the New York bank account ledger sheet is an $8000 check, corresponding in time to $8000 payment to the hotel. So they are tied in together. So they are tied in together and therefore the wedding bill was admitted in evidence."

where it came from or not, we know it was hidden and unreported money, and we are going to convict the defendant because of it." Subject to this objection, also, is the testimony that on that trip, part of the money that was taken up, $10,000, was loaned by the wife to defendant's brother-in-law.

It was error to admit the evidence, it was error to refuse the charges, and for these errors the judgment must be reversed.

■■ As to the sixth specification of error, it is sufficient to say that, while the judge gave a fair charge and generally conducted the trial of the case with care and patience, it is quite plain that he did participate too much in its trial, he did ask too many questions, he did make too many interruptions, and that things said and done by him must inevitably have had the effect, to an extent at least, of having the jury consider him, as was in effect said by another United States Attorney in another case, as interested in the case on the side of the prosecution. Cf. Steele v. United States, 5 Cir., 222 F.2d 628.

We do not say that a district judge must ask no questions and must never take an active part in the eliciting of testimony. It is certainly true, though, that a judge must not only be impartial and disinterested, but must also appear so.

Finally, it is far better for the trial judge to err on the side of obstention from intervention in the case rather than on the side of active participation in it, especially when the major part, if not all of his interruptions and interventions, though by chance rather than by design, are, or seem to be, on, or tending to be on, the side of the government.[5]

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

---

**5.** Gomila v. United States, 5 Cir., 146 F.2d 372; and Adler v. U. S., 5 Cir., 185 F. 464–472; Hunter v. U. S., 5 Cir., 62 F. 2d 217, 220; Williams v. U. S., 9 Cir., 93 F.2d 685; Berkovitz v. U. S., 5 Cir., 213 F.2d 468.