In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00164-CR
______________________________


JAMES CALVIN TEMS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31687-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            James Calvin Tems' initial minor traffic offense escalated into a high speed chase before
police officer Terry Roach finally apprehended him and found in Tems' vehicle methamphetamine,
drug paraphernalia, and an unrestrained eighteen-month-old girl.


 Tems appeals from his resulting
three jury convictions


 for possessing a controlled substance with intent to deliver, evading detention
in a vehicle, and endangering a child. This appeal concerns the conviction for the possession of a
controlled substance with the intent to deliver. Tems raises identical issues in each appeal and has
briefed all three appeals together.


 In response to Tems' points of error, we hold that, in each case,
(1) the evidence is legally sufficient, (2) the evidence is factually sufficient, (3) the trial court was
within its discretion in refusing to allow Tems' trial counsel to withdraw, and (4) the trial court did
not improperly give "advice to State's counsel during the punishment phase." We affirm the
judgment of the trial court.
(1)       The Evidence Is Legally Sufficient
            In his first and second points of error, Tems argues the evidence is legally insufficient to
support the jury's verdict. According to Tems, the State failed to prove at least one material element
of each of the three offenses. Tems contends the State failed to prove that Tems had intent to deliver
the methamphetamine, that Tems fled from the officer, that Roach's attempt to detain Tems was
lawful, and that the child was placed in imminent danger.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This requires the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).
            While on patrol in White Oak, Roach observed in his rearview mirror a vehicle turn right
onto George Richey Road from Whatley Road without signaling and then accelerate to a high rate
of speed. Roach turned around and pursued the vehicle. At the intersection of George Richey Road
and White Oak Road, the vehicle disregarded a four-way stop. Roach testified that he drove "over
95 miles an hour trying to catch this truck." At the intersection of "1845" and George Richey Road,
Roach caught up with the vehicle and activated his overhead lights and siren. Roach testified the
chase slowed down at this point, but Tems still did not stop. Tems drove down Tenneryville Road,
turned left on Dundee Road, and then pulled into a parking space in front of a duplex. 
            Roach exited his vehicle and placed Tems under arrest. At this point, Roach noticed an
eighteen-month-old girl standing up in the truck seat, looking out the back window. The girl was
not restrained in any way. While checking on the child, Roach observed a blue bag on the seat
between the driver's seat and the child. The bag was open and had syringes on top. Tems originally
stated he needed syringes because he was diabetic but, after being unable to answer several questions
about diabetes, Tems admitted he was not diabetic. On examination of the bag, Roach discovered
small Ziploc bags, a manual scale, an electric scale, a spoon, eleven grams of methamphetamine,



lighter fluid, and lithium batteries. Pridgen testified that lighter fluid and lithium batteries can be
used in the manufacture of methamphetamine. 
            Possession With Intent To Deliver. Tems argues the State failed to introduce sufficient
evidence that he possessed the drugs with the intent to deliver. It is unlawful to possess any quantity
of methamphetamine. Tex. Health & Safety Code Ann. § 481.102(6) (Vernon Supp.
2004–2005), § 481.115 (Vernon 2003). Possession of more than four grams with the intent to
deliver is a second-degree felony. Tex. Health & Safety Code Ann. § 481.115(d). Intent to
deliver may be proved by circumstantial evidence. Roberts v. State, 963 S.W.2d 894, 898 (Tex.
App.—Texarkana 1998, no pet.). Expert testimony by experienced law enforcement officers may
be used to show intent to deliver. Bryant v. State, 997 S.W.2d 673, 675 (Tex. App.—Texarkana
1999, no pet.).
            Eleven grams of methamphetamine were discovered in a bag on the front seat of Tems'
vehicle. Tems was the only occupant of the vehicle other than an eighteen-month-old child.
Although Tems denied ownership of the methamphetamine, Tems admitted the blue bag, syringes,
Ziploc bags, spoon, and one of the scales belonged to him. Proof that the accused knew he or she
was in possession of the controlled substance may be inferred from the circumstances of the case. 
See Castellano v. State, 810 S.W.2d 800, 807 (Tex. App.—Austin 1991, no pet.). In addition, the
bag contained two scales, a spoon, and numerous small plastic bags commonly used in selling drugs. 
Roach testified a spoon is often used to transfer drugs to a scale in order to weigh them. A rational
juror could have concluded beyond a reasonable doubt that Tems possessed the methamphetamine
with the intent to deliver.
            Evading Detention. A person commits the offense of evading detention in a vehicle if he or
she intentionally flees from a person he or she knows is a peace officer attempting lawfully to arrest
or detain him or her. See Tex. Pen. Code Ann. § 38.04(a) (Vernon 2003). Tems challenges the
sufficiency of the evidence based on two elements of the offense: whether Tems was fleeing and
whether the officer was lawfully attempting to detain Tems. According to Tems, the State
introduced insufficient evidence to prove he fled from Roach. Further, Tems argues the State failed
to show that Roach's actions in attempting to detain him were lawful.
            The State introduced sufficient evidence that Tems fled from the police. Roach testified he
followed Tems for two to three miles with his overhead lights and siren on. Further, the videotape
of the pursuit shows Roach, with his lights on, following Tems for a good distance before Tems
stopped. A rational juror could have concluded beyond a reasonable doubt that Tems fled from
police. 
            Lawful Police Action. According to Tems, the evidence is legally insufficient that Roach's
actions were lawful, because the State failed to prove Tems was traveling on public roads. See Tex.
Transp. Code Ann. § 542.001 (Vernon 1999). To show Roach was attempting to lawfully detain
Tems, Roach must have had, at a minimum, a reasonable suspicion that Tems had committed a
crime. Terry v. Ohio, 392 U.S. 1, 25 (1968). Roach testified Tems failed to signal for a turn,
disregarded a stop sign, and traveled at a high rate of speed. A law enforcement officer may lawfully
stop and detain a person for a traffic violation. Zervos v. State, 15 S.W.3d 146, 151 (Tex.
App.—Texarkana 2000, pet. ref'd); see Tex. Transp. Code Ann. §§ 544.010, 545.104, 545.351
(Vernon 1999), § 545.352 (Vernon Supp. 2004–2005).
            Tems argues: 
In the not too far distant past a former President of the United States used to cruise
the roads of his ranch on the Pedernales at far more than what might otherwise have
been the "legal" limit, sometimes with an open can of beer perched on the dashboard,
and, while his behavior may not have been exemplary in terms of the prudent
operation of a motor vehicle, he never violated a single traffic law because he was
on private property.
  
While our former President was clearly on private property when cruising his ranch, and a person
could lawfully drive with an open alcoholic beverage on the public roads of Texas thirty years ago,
the jury in this case could reasonably conclude Tems was not driving on private property. The
videotape of the pursuit was introduced into evidence, and the jury could reasonably conclude from
the videotape that Tems was traveling on public roads. The videotape shows roads which appear to
be public roads, and Texas road signs are visible alongside the roads. In addition, the name of at
least one of the roads indicates the roads were public.
            Endangering a Child. A person commits the offense of endangering a child if he or she
"intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in
conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or
physical or mental impairment." See Tex. Pen. Code Ann. § 22.041(c) (Vernon 2003). The State
must prove each and every element alleged beyond a reasonable doubt as guaranteed by the Due
Course of Law provision of the Texas Constitution. See Tex. Const. art I, § 19; Wilson v. State,
536 S.W.2d 375, 377 (Tex. Crim. App. 1976). 
            Tems argues that a mere speculative possibility of danger is insufficient to constitute
imminent danger. Some courts have interpreted imminent danger to mean "'ready to take place, near
at hand, impending, hanging threateningly over one's head, menacingly near." Devine v. State, 786
S.W.2d 268, 270 (Tex. Crim. App. 1989). Imminent refers to "a present, not a future threat of bodily
injury or death." Garcia v. State, 819 S.W.2d 634, 636 (Tex. App.—Corpus Christi 1991, no pet.). 
Tems argues the State failed to prove the truck lurched, bounced, or swerved in a manner which
would place the child in imminent danger. Tems acknowledges that the failure to restrain a child
in a moving vehicle is against the law, but argues the violation is only a class C misdemeanor, rather
than a state-jail felony. 
            The evidence in this case is legally sufficient to support the endangerment of a child. The
State presented evidence of an immediate and present danger to the child. Roach testified he was
traveling at more than ninety-five miles per hour and caught up with Tems' vehicle only as they
traveled around curves in the road. A jury could have reasonably concluded Tems was traveling at
an extremely high speed. Roach testified that, because a child of eighteen months is so small, "it
doesn't take much of a joist [sic] or anything to throw a baby around on the inside of the vehicle." 
In addition, Roach testified that, in a vehicle traveling nearly 100 miles per hour, an unrestrained
baby is in danger, and the results can be devastating. Roach also testified Tems disregarded a four-way stop.
            The statute does not require actual harm to the child, but rather only imminent danger of
bodily injury. A rational juror could have concluded Tems intentionally, knowingly, recklessly, or
with criminal negligence engaged in conduct that placed the child in imminent harm. Traveling at
a high rate of speed and losing control of a vehicle in an effort to evade the police has been held to
be sufficient evidence of child endangerment. See Walker v. State, 95 S.W.3d 516, 521 (Tex.
App.—Fort Worth 2002, pet. ref'd) (rejecting argument that statute requires proof of intent or
knowledge that conduct places child in imminent danger). Although there is no evidence Tems lost
control of his vehicle, Roach testified that Tems traveled at a high rate of speed and that the child
was unrestrained. Further, Tems' conduct in fleeing from the police placed the child in immediate
danger that the police would use affirmative methods to stop the vehicle. These dangers were
present, impending, and menacingly near. A rational juror could have concluded beyond a
reasonable doubt that the child was in imminent danger.



            Viewing the relevant evidence in the light most favorable to the verdict, we conclude a
rational juror could have found the essential elements of all three offenses beyond a reasonable
doubt. The State introduced evidence that Tems possessed illegal drugs and drug paraphernalia, that
Tems fled from police at a high rate of speed, and that the child was unrestrained. A rational juror
could have also concluded beyond a reasonable doubt that Tems had the necessary intent to deliver
the methamphetamine, that Tems fled the officer, that Roach's attempt to detain Tems was lawful,
and that Tems' conduct placed the child in imminent danger. The evidence is legally sufficient.
(2)       The Evidence Is Factually Sufficient
            In his third and fourth points of error, Tems makes identical arguments that the evidence is
factually insufficient to support the jury's verdict. According to Tems, a rational juror could not have
concluded beyond a reasonable doubt that Tems committed all the material elements of each of the
three offenses when the evidence is viewed in a neutral light. Tems contends the State failed to
prove that Tems had intent to deliver the methamphetamine, that Tems fled the officer, that Roach's
attempt to detain Tems was lawful, and that the child was placed in imminent danger. 
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). There are two ways in which we may find the evidence to be
factually insufficient. Id. First, if the evidence supporting the verdict, considered alone, is too weak
to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, if—when we weigh the evidence supporting and contravening the
conviction—we conclude that the contrary evidence is strong enough that the State could not have
met its burden of proof, we must find the evidence insufficient. Id. at 484–85. "Stated another way,
evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under
a beyond-a-reasonable-doubt standard." Id. at 485. 
            Intent To Deliver. Tems argues the evidence supporting his intent to deliver is factually
insufficient. Although he admitted the blue bag, syringes, spoon, plastic bags, and one of the scales
were his, Tems denied ownership of the other set of scales and the methamphetamine. Tems
testified he had not placed the methamphetamine in the blue bag. Tems did admit he has used
methamphetamine and claimed he bought the manual scale so he could make sure the drugs he
purchased were of the correct quantity. In addition, Tems testified the lighter fluid was for his
cigarette lighter and the lithium batteries were for his cell phone.


 The evidence is factually
sufficient to support a finding of possession of methamphetamine with intent to deliver.
            Evading and Endangering. Tems argues that, when the evidence is viewed in a neutral light,
there is insufficient evidence that he fled from the police, that Roach was acting in a lawful manner,
or that the child was placed in imminent danger of bodily injury. Tems testified he had been caring
for the child for several months, after the child's mother informed him she could not take care of the
child. According to Tems, he had borrowed the vehicle and had forgotten the child seat at home. 
            Tems testified he was not attempting to flee the police, but rather only to surrender at a
convenient location. Tems testified he had some outstanding ticket warrants in White Oak and
believed he would be arrested. Tems claims he did not want the child placed with the Texas
Department of Family and Protective Services and wanted to reach his sister's house, where the child
could be cared for. According to Tems, he drove only about forty to forty-five miles per hour and
followed all traffic laws. Tems denied traveling at a high rate of speed and denied that Roach had
to travel ninety-five miles per hour to catch him. We note that the videotape records Roach reciting
the speeds Tems was traveling at as fifty, forty, and thirty miles per hour at various points during the
videotaping. We also note that Tems appeared to be in control of the vehicle in the videotape. But,
the videotape starts in the middle of the chase, and the jury could have believed Roach's testimony
that Tems slowed down at the end of the chase.
            Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept one
version of facts and reject another, or reject any of a witness' testimony. Penagraph v. State, 623
S.W.2d 341, 343 (Tex. Crim. App. 1981). It is the jury's job to judge the credibility of the witnesses
and the weight to be given their testimony, and the jury may resolve or reconcile conflicts in the
testimony, accepting or rejecting such portions thereof as it sees fit. Dunn v. State, 13 S.W.3d 95,
97 (Tex. App.—Texarkana 2000, no pet.). Because the jury is the sole judge of the weight and
credibility of the witnesses' testimony, it may accept or reject any or all testimony of any witness. 
See Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The jury could have believed
Roach's testimony over Tems' and concluded Tems had committed traffic violations, had fled from
the police, and had placed the child in imminent danger of bodily injury.
            When viewed in a neutral light, the evidence supporting the verdict, considered alone, is not
too weak to support the jury's finding of guilt beyond a reasonable doubt. When we weigh the
evidence supporting and contravening the conviction, the contrary evidence is not strong enough that
the State could not have met its burden of proof. The evidence is factually sufficient on all argued
points.
(3)       The Trial Court Was Within Its Discretion in Refusing To Allow Tems' Trial Counsel To
Withdraw
            Tems argues in his fifth point of error that the trial court erred in refusing to permit his trial
counsel to withdraw. During the course of the proceedings in the trial court, Tems' trial counsel filed
two motions to withdraw. 
            At a hearing concerning the first motion to withdraw, Tems complained he did not trust his
trial attorney. Tems testified he was dissatisfied with his trial counsel's representation and wanted
a new attorney. Tems stated that all his trial counsel had ever done was try to get him to plead guilty,
that his trial counsel did not discuss trial strategy but rather only "gave warnings" and "already had
me convicted of two life sentences." Tems stated his attorney had told him that, without a guilty
plea, "I was going to do time." Tems informed the trial court his trial counsel had told him that his
case was a "high profile case," that he would be a "trophy for the district attorney's office," and that
"[he] didn't need a lawyer, [he] needed a deal maker." Tems admitted his attorney had visited him
in jail numerous times and had discussed his pending legal matters. The trial court overruled the
motion to withdraw. The trial court noted that the case was on the trial docket and there was a
possibility that the case may proceed to trial within the week.
            The trial court's decision to deny the motion to withdraw is reviewed for abuse of discretion. 
King v. State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). An indigent defendant's right to counsel
does not require the trial court to appoint a counsel agreeable to the accused. Id. In general,
personality conflicts and disagreements concerning trial strategy do not form valid grounds for
withdrawal. Id. Unless a defendant shows adequate grounds for the appointment of new counsel
or chooses to waive his or her right to counsel and to proceed pro se, he or she must accept the
counsel appointed by the trial court. Garner v. State, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st
Dist.] 1993, pet. ref'd). The trial court did not abuse its discretion in finding Tems had failed to show
adequate cause for the appointment of new counsel based on the first motion to withdraw.
            Three days before voir dire, Tems' trial counsel filed another motion to withdraw. In the
motion, Tems' trial counsel stated he had just received notice that Tems had filed a grievance against
him. Although the grievance had been dismissed before the hearing on the second motion, an appeal
of the dismissal might have been available. The trial court denied the motion to withdraw. 
            When a client files a disciplinary complaint against his or her attorney, an actual conflict of
interest may exist. See id. at 99. Tems argues the injection of the disciplinary proceeding into the
attorney-client relationship made trial counsel and Tems adversaries. According to Tems, the
adversity would prevent any attorney from presenting an adequate defense. However, the filing of
the complaint raises only the possibility of a conflict of interest. Id. The reason a grievance does
not automatically require the appointment of new counsel is obvious; such a rule could be exploited
by the indigent defendant to delay trial or to select the attorney of his or her choice. The contents
of the grievance do not appear in the record, and we cannot conclude the trial court abused its
discretion based on the reasons given during the hearing. The trial court did not abuse its discretion
in finding that Tems failed to show adequate grounds for the appointment of new counsel. Tems has
not shown he was denied his right to counsel as guaranteed by the Sixth Amendment.
(4)       The Trial Court Did Not Improperly Give "Advice to State's Counsel During the Punishment
Phase"
            In his final point of error, Tems contends the trial court gave aid and assistance to the State
in how to proceed. At the commencement of the punishment phase of trial, the following colloquy
occurred outside the presence of the jury:
[THE STATE]: What are we doing here?
 
THE COURT: On the notice of intent to seek enhanced punishment.
 
[THE STATE]: Well, that conviction is already before the jury.
 
THE COURT: Well, I understand that, but he's got to plead to the notice
of intent.
 
[THE STATE]: Well, I'd like to see it done in front of the jury myself, but
. . . .
 
THE COURT: What difference does it make? I'm going to instruct them
that he's done it.
 
[THE STATE]: Well . . . .
 
THE COURT: Let's do it my way for a change. 31,687-B State of Texas
versus James Calvin Tems, at this time, in this cause, Mr. Tems, the State will read
to you its notice of intent to seek enhancement of the range of punishment. You have
it handy?
 
[THE STATE]: 15 to life.
 
THE COURT: No, no, no. Read him the notice.
 
[THE STATE]: The notice? I can do that.

The State then read to Tems the notice that the State was seeking enhancement of punishment by
pleading and proving a prior felony conviction for driving while intoxicated.


 Following the reading
of the enhancement paragraph, Tems pled "true."
            According to Tems, the trial court's comments violated the duty of the trial court to maintain
impartiality throughout the trial. See Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000); see
also Blumburg v. United States, 222 F.2d 496, 501 (5th Cir. 1955).
To the jury the language and conduct of the trial court have a special and peculiar
weight. The law contemplates that the trial judge shall maintain an attitude of
impartiality throughout the trial. Jurors are prone to seize with alacrity upon any
conduct or language of the trial judge which they may interpret as shedding light
upon his view of the weight of the evidence, or the merits of the issues involved. The
delicacy of the situation in which he is placed requires that he be alert in his
communications with the jury, not only to avoid impressing them with any view that
he has, but to avoid in his manner and speech things that they may so interpret.

Blue, 41 S.W.3d at 131. We disagree, though, that the trial court violated its duty to maintain
impartiality. The above colloquy reflects the trial court was simply exercising its authority to control
the order and manner of the proceedings, not giving advice to counsel. "A trial judge has broad
discretion in maintaining control and expediting the trial." Jasper v. State, 61 S.W.3d 413, 421 (Tex.
Crim. App. 2001); Singleton v. State, 91 S.W.3d 342, 351 (Tex. App.—Texarkana 2002, no pet.). 
Tems argues that, if the trial court had not instructed the State how to proceed, the enhancements
may not have been read and the State would not have been entitled to an instruction on the enhanced
punishment range. The record, though, does not support this contention. The State and the trial
court had differing opinions about when the plea should occur. The State stated it would "like to see
[the plea] done in front of the jury," and the trial court desired the plea to occur at that point in the
proceedings.
            We note the reading of the enhancement and the plea occurred outside the presence of the
jury. The Texas Court of Criminal Appeals has suggested that the reading of enhancement
allegations and the defendant's plea should occur while the jury is present. See Turner v. State, 897
S.W.2d 786, 788–89 (Tex. Crim. App. 1995); cf. Linton v. State, 15 S.W.3d 615, 619 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref'd) (any error in failing to read allegations subject to
harmless error analysis). Tems did not object at trial, or argue on appeal, that the trial court erred
in not having the jury present. The Texas Court of Criminal Appeals has suggested that such an
error cannot be raised for the first time on appeal. See Reed v. State, 500 S.W.2d 497, 499 (Tex.
Crim. App. 1973). Further, any error in pleading outside the presence of the jury would be harmless
since Tems pled true to the allegations and the trial court informed the jury of his plea. 
            The trial court's actions reflect it was maintaining control over the proceedings, not giving
advice to counsel. Because the trial court did not violate its duty to maintain impartiality, we
overrule Tems' final point of error.
            For the reasons stated, we affirm the judgment of the trial court.

 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 26, 2005
Date Decided:             August 30, 2005

Do Not Publish