### GOMILA et al. v. UNITED STATES.
### No. 11084.

Circuit Court of Appeals, Fifth Circuit.

Dec. 28, 1944.

Warren O. Coleman, Clarence Dowling, and George P. Nosacka, of New Orleans, La., for appellants.

Edw. J. Boyle, Asst. U. S. Atty., of New Orleans, La., for appellee.

Before HOLMES, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Francis X. Gomila and Anthony Chauppette were convicted with four others under an indictment charging them with conspiracy to violate:

1. Section 2810 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 2810, by having the possession, custody, and control of certain unregistered stills.

2. Section 2834 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 2834, by unlawfully making and fermenting certain mash for the distillation and production of

spirits on premises other than a distillery duly authorized according to law.

. 3. Section 2833 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 2833, by unlawfully carrying on the business of a distillery without having given bond as required by law.

Gomila was sentenced to imprisonment for a period of two years and fined the sum of $10,000; Chauppette was sentenced to imprisonment for a period of one year and fined the sum of $2,500. Each appealed from the sentence thus imposed.

Appellants rely for reversal on nine specifications of error. Under our view of the case only three of them need be considered; they are as follows:

1. That the court improperly charged the jury on the presumption of innocence.

2. That the court erred in refusing to permit the jury to propound questions of law verbally and in the hearing of defendants and their counsel, but required the jury to submit written questions which were not placed of record and of the nature of which defendants were not informed.

3. That the court erred throughout the trial in unnecessarily taking an active part in the prosecution, by taking away the examination of witnesses from respective counsel who were properly conducting said examinations, and by questions and comments showing a hostile attitude towards defendants.

■ In charging the jury on the presumption of innocence, the court said: "The rule of the presumption of innocence imposes upon the government the burden of establishing the guilt of each defendant, as stated, beyond a reasonable doubt, but, Gentlemen, as forceful as that rule is in protecting one charged with crime, it must never be forgotten that it was not intended, nor has it ever been intended, as extending an aid to one, who in fact is guilty, so that he may escape just punishment. The rule is but a humane provision of the law, intended to prevent, so far as human· agencies can, the conviction of an innocent defendant, but absolutely nothing more."

The statement that the presumption of innocence "was not · intended, nor has it ever been intended, as extending an aid to ·one, who in fact is guilty, so that he may escape just punishment," is not a correct statement of the law. The presumption of innocence applies alike to. the guilty and to the innocent, and the burden rests upon the Government throughout the trial to establish, by proof beyond a reasonable doubt, the guilt of the accused. Until guilt is established by such proof, the defendant is. shielded by the presumption of innocence. The fact of guilt does not enter into the application of the rule, the intent and purpose of which is to protect all persons coming before the courts charged with crime until the presumption of innocence is overthrown by evidence establishing guilt beyond a reasonable doubt; and, where the evidence is purely circumstantial, to the exclusion of every reasonable hypothesis of innocence.

■ After the jury had deliberated for several hours, it informed the court that further instructions were desired. Thereupon, the jury was returned into open court. The foreman then stated that the questions on which further instructions were desired had been reduced to writing and asked the court whether or not he should read them. The trial judge had the written questions delivered to him without same being read, and after he read them he gave the jury a supplemental charge. Neither the defendants nor their counsel were informed of the nature of these questions; consequently, no opportunity was afforded to them to request a supplemental · charge with reference thereto, or to question the correctness of the charge as given. These written questions are not in the record. The content of one of the questions may be gathered from the supplemental charge; the content of the others may not be ascertained with certainty.

Defendants were entitled to be apprised of the nature of these questions and were entitled to an opportunity to be heard in connection therewith. When the foreman asked whether or not he should read aloud the questions as written, he should have been permitted to do so; thus, the court, the Government, and the defendants would have been apprised of the nature of the questions and of the matters with reference to which the jury desired further instructions. To pursue a course which prevented this was error.[1]

■ This brings us to the third assignment of error, namely, undue participation of the court in the trial. A fair and

[1] Cf. Little v. United States, 10 Cir., 73 F.2d 861, 864, and authorities there cited.

impartial trial is guaranteed to every defendant, and fundamentally means a trial before an impartial judge and by an impartial jury. In aid of truth and in furtherance of justice, the court may question a witness,—in fact, he may call and question a witness not used by either party,[2]—but in so doing the court should be careful to preserve an attitude of impartiality and guard against giving the jury any impression that the court was of the opinion that defendant was guilty. The opinion of the judge, on account of his position and the respect and confidence reposed in him and in his learning and assumed impartiality, is likely to have great weight with the jury, and such fact of necessity requires impartial conduct on his part. We have had occasion heretofore to comment upon the conduct of the trial judge in taking over and examining witnesses under examination by respective counsel, and his comments in the presence and hearing of the jury. In Adler v. United States, 5 Cir., 182 F. 464, 472, we said:

" * * * The impartiality of the judge —his avoidance of the appearance of becoming the advocate of either one side or the other of the pending controversy which is required by the conflict of the evidence to be finally submitted to the jury—is a fundamental and essential rule of especial importance in criminal cases. The importance and power of his office, and the theory and rule requiring impartial conduct on his part, make his slightest action of great weight with the jury. While we are of opinion that the judge is permitted to take part impartially in the examination or cross-examination of witnesses, we can readily see that, if he takes upon himself the burden of the cross-examination of defendant's witnesses, when the government is represented by competent attorneys, and conducts the examination in a manner hostile to the defendant and the witnesses, the impression would probably be produced on the minds of the jury that the judge was of the fixed opinion that the defendant was guilty and should be convicted. This would not be fair to the defendant, for he is entitled to the benefit of the presumption of innocence by both judge and jury till his guilt is proved. If the jury is inadvertently led to believe that the judge does not regard the presumption, they may also disregard it.

"A cross-examination that would be unobjectionable when conducted by the prosecuting attorney might unduly prejudice the defendant when it is conducted by the trial judge. Besides, the defendant's counsel is placed at a disadvantage, as they might hesitate to make objections and reserve exceptions to the judge's examination, because, if they make objections, unlike the effect of their objections to questions by opposing counsel, it will appear to the jury that there is direct conflict between them and the court."

In Hunter v. United States, 5 Cir., 62 F.2d 217, 220, we again said:

"The assignments of error based on the district judge's cross-examination of appellant are in our opinion well taken. While that method of cross-examination, if it had been conducted by the district attorney, might have been proper, a district judge ought never to assume the role of a prosecuting attorney and lend the weight of his great influence to the side of the government. It is the judge's duty to maintain an attitude of unswerving impartiality between the government and the accused, and he ought never in any questions he asks go beyond the point of seeing to it, in the interests of justice, that the case is fairly tried. We refer with entire approval to what Judge Shelby, speaking for this court long ago, said on this subject in Adler v. United States, 5 Cir., 182 F. 464. * * * It is vastly more important that the attitude of the trial judge should be impartial than that any particular defendant, however guilty he may be, should be convicted. It is too much to expect of human nature that a judge can actively and vigorously aid in the prosecution and at the same time appear to the layman on the jury to be impartial. * * * *"

In Williams v. United States, 9 Cir., 93 F.2d 685, the Ninth Circuit Court, as set forth in the syllabus, held:

"The harm done when the trial judge departs from that attitude of disinterestedness which is the foundation of a fair and impartial trial is not diminished because the judge so acts by reason of unrestrained zeal or through inadvertence and is not intentionally unfair.

"It is improper for the court to take away the examination of witnesses from counsel when they are conducting their

---

[2] Young v. United States, 5 Cir., 107 F.2d 490, 493.

cases in an able and lawyer-like manner and conduct examination in his own way. * * *

"It was improper for the trial court during a criminal trial to interrupt the witness while answering a question by stating, 'in other words you met Mr. B. [the defendant],' thereby putting into the mouth of the witness words prejudicial to the defendant.

"Counsel are not held to strict accountability for failure to object or except when the questions are asked by the court."

In the present case the court below repeatedly took away the examination of witnesses from competent counsel who were conducting the examination in their own way, and cautioned an informer whose answers to questions by Government counsel apparently failed to accord with a statement he had previously given a Government agent—permitting him, over objection, to read the statement to refresh his memory—to remember that he was under oath and further reminded him that: "You are here to answer every question that is put to you and as to which you have a knowledge, and you will be expected to so answer. Of course, you are entirely correct, and if you do not remember, you should not make any statement under oath, which is not borne out by your recollection, and you will be given an opportunity to examine that statement again."

Following this comment by the court, the witness was again handed the written statement and asked two questions by Government counsel; whereupon, according to the record, the following took place:

"Q.[3] Mr. Witness, have you read the second question and answer appearing on that page (indicating by pointing) of your statement?

"Mr. Dowling:[4] I object to that, if your Honor please. The witness had had ample opportunity to refresh his memory, and, if the government is taken by surprise, he [it] has a right to impeach it [the witness].

"The Court: Is there any part of the statement that is not true?

"Mr. Dowling: I object to that question. That statement is not in evidence.

"The Court: That objection is overruled also. The Court permits the statement again to be examined, and the witness will answer the question, if he can.
* * * * *

(At this point the witness again examined the statement.)

"By Mr. Boyle: Q. I ask you again, Burdwell, what did Gomila say after Bill Chauppette told him that you were the two men for the work?

"Mr. Dowling: I object, if your Honor please, on the ground that the witness has already answered that question twice * * *.

"The Court: What, if anything else, did Gomila say, if he did say something else?

"Mr. Dowling: I object to that question by the Court.

"The Court: The objection is overruled.
* * * * *

"The Court: What, if anything else, did Gomila say, if he said anything else? You said that your statement was correct, and you have had an opportunity to examine it, and since you have had an opportunity to examine it to refresh your memory, is there anything else now that you have to say?

"Mr. Dowling: To which question by the Court, we respectfully object.

"The Court: Very well.

"Mr. Dowling: Your Honor overrules it?

"The Court: The Court overrules the objection.
* * * * *

"The Court: Answer the question."

While under cross-examination, a government witness, who had been shown by his own admissions to have been an accomplice, was asked:

"Q. What is your great interest in having Mr. Gomila convicted in this case?

"Mr. Boyle: I object to that.

"The Court: I sustain the objection. The interest might be the interest that any good citizen might have."

The jury may have been inadvertently led to believe by the judge's repeated examination of witnesses and from his comments, followed by his charge that the presumption of innocence was never intended to aid one who in fact is guilty, that the judge was of the opinion that defendants were guilty and should be con-

---

[3] By Mr. Boyle, Government counsel.   [4] Defense counsel.

victed. Such a belief necessarily would be prejudicial.

The testimony connecting appellants with the conspiracy was almost wholly that of confessed accomplices, and was sufficient, if believed by the jury, upon which to rest the verdict of guilty, but whether the jury would have so found from such testimony, regardless of the errors referred to, is subject to serious question.

■ No objection was made nor was any exception taken to the court's action heretofore discussed, and the rule is invoked that the appellate courts will not consider errors urged for the first time on appeal. That these errors were committed is patent on the face of the record, and, where serious injury may result, it has many times been held that it is the duty of an appellate court to notice and correct said errors even though they were not challenged during the trial. See Lamento v. United States, 8 Cir., 4 F.2d 901, 904; Benson v. United States, 5 Cir., 112 F.2d 422, 423; Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345; United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555.

■ The cumulation of these errors cannot be treated as harmless, and nothing remains but to reverse and remand the case for a new trial.

The other errors complained of will hardly occur on a new trial, and we see no need to discuss them.

Reversed and remanded.