**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clark L. FRY, Defendant-Appellant.**
**No. 13309.**

United States Court of Appeals
Seventh Circuit.

June 13, 1962.

. Prentice H. Marshall and Robert E. Pfaff, Chicago, Ill., for appellant.

George E. Rapp, U. S. Atty., Madison, Wis., Thomas S. Howard, Department of Justice, Chicago, Ill., for appellee.

Before DUFFY, SCHACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant, Clark L. Fry, was indicted in ten counts and convicted on five of nine counts charging him with using

the mails or other means of transportation in interstate commerce in the employment of a scheme to defraud in the offer and sale of securities as proscribed by Section 17(a) (1) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a) (1), and on one count charging him with using the mails to deliver an unregistered security as proscribed by Section 5(a) (2) of the Securities Act of 1933, 15 U.S.C.A. § 77e(a) (2). The trial was before a jury. Defendant was sentenced to a total of five years imprisonment and fined $5,000.

Defendant appeals on the grounds that (1) he failed to receive a fair trial because of the conduct of the trial court and (2) the trial court improperly excluded evidence relating to defendant's defense of good faith.

Defendant testified that he is a mechanic and carpenter by trade; that he has had three years of formal education; that he has been an inventor since 1909; and that he has invented over one hundred items and has obtained four United States patents.

At the time of his trial, defendant was working on five inventions or processes which are germane to the indictment: (1) a steam generating process which would form energy by the use of heat producing alloys; (2) a protective paint for wood capable of making the wood impervious to fire and vermin; (3) a non-slip lock nut; (4) roll away furniture; and (5) a water retaining fertilizer.

Count 1 of the indictment sets forth 23 false and fraudulent representations alleged to have been made by defendant. Some of these representations are statements that certain railroads and other companies had purchased or offered to purchase or were interested in obtaining defendant's inventions; other representations concern the return defendant told the investors they could expect when the inventions were sold. None of the false representations charged in the indictment concerns the merit or workability of defendant's devices.

Among the allegedly false and fraudulent representations testified to by investors in defendant's devices are representations that the Baltimore & Ohio Railroad Company would lease rights to defendant's steam generating machine; that it was going to use defendant's lock nut on its trains; and that it had tested defendant's protective paint and wanted to use the paint on its boxcars, wooden trestles, and railroad ties. Investors in defendant's devices further testified that defendant represented that General Electric Company had offered several million dollars for the steam generating machine; that Montgomery Ward & Company had purchased lawn furniture made by defendant; that the Chicago & North Western Railway Company was interested in using the steam generator and protective paint; and that Wisconsin Power & Light Company was interested in defendant's steam generator.

Officials of the Chicago & North Western Railway, General Electric, and Wisconsin Power & Light testified that these companies had no dealings with defendant and did not know him. The furniture buyer for Montgomery Ward & Company testified his company had never purchased furniture from defendant. The vice president of the Baltimore & Ohio Railroad testified to the effect that his company had some preliminary dealings with defendant but never had any arrangement or understanding with defendant for the use of his steam generator, lock nut or protective paint; on the contrary, the vice president testified the Baltimore & Ohio had tested the protective paint and found it was unsatisfactory and had decided that defendant had made too little progress on his steam generating machine to warrant his receiving further assistance from the Baltimore & Ohio.

Defendant denied making any representations to investors concerning the Wisconsin Power & Light Company, the Chicago & North Western Railway Company, Montgomery Ward & Company, or General Electric Company. As to the Baltimore & Ohio Railroad Company, de-

fendant testified in substance that he acted in good faith and made no representations to investors which were inconsistent with his dealings with officials of the company.

Defendant contends that the trial court intruded into the trial to such an extent that he was denied a fair and impartial trial; that the court's questions ridiculed defendant and his witnesses and demonstrated the court's belief in defendant's guilt; and that the court aided the prosecution on numerous occasions by interposing objections, by directing the reading of exhibits, and by laying the foundation for the testimony of government witnesses after defense counsel had objected to the testimony on the ground of improper foundation.

The judge conducting a jury trial in a federal court is more than a "mere moderator"; he is "the governor of the trial for the purpose of assuring its proper conduct." Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321. He has the prerogative, and at times the duty, of eliciting facts he deems necessary to the clear presentation of the issues. To this end he may examine witnesses who testify and even call witnesses on his own motion. United States v. Brandt, 2 Cir., 196 F.2d 653.

In eliciting facts, however, and in attempting to expedite the trial in the aid of truth and furtherance of justice, the judge must be careful to preserve an attitude of impartiality and to guard against giving the jury an impression that the court believes the defendant is guilty. Gomila v. United States, 5 Cir., 146 F.2d 372; United States v. Carmel, 7 Cir., 267 F.2d 345.

If the trial court undertakes the burden of examining witnesses and conducts the examination in a manner hostile to or derisive of defendant's cause, the impression on the jury is likely to be that the court believes the defendant guilty. This, of course, would not be fair to defendant, "for he is entitled to the benefit of the presumption of innocence by both the judge and jury until his guilt is proved. If the jury is inadvertently led to believe that the judge does not regard the presumption, they may also disregard it." Gomila, supra 146 F.2d at 374.

As the court further stated in Gomila:

"The harm done when the [court] departs from that attitude of disinterestedness which is the foundation of a fair and impartial trial is not diminished because the judge so acts by reason of unrestrained zeal or through inadvertence and is not intentionally unfair." Supra at 374.

In the instant case we believe the trial judge departed from this attitude of disinterestedness in such a manner as to deprive defendant of a fair trial. We come to this conclusion reluctantly because of our conviction that this departure was not intentionally pursued by the able trial judge who has earned the high regard of both his brother judges and the bar for his fairness and impartiality.

It would serve no purpose, we believe, to quote from the record any single incident objected to by defendant; further, we do not feel called upon to determine which, if any, of the incidents, considered separately, might be sufficient to require a new trial. Indeed, defendant concedes that no one series of questions or interjections by the trial judge was so prejudicial as to require a reversal. It is sufficient to point out that the record shows that in the course of a six and one-half days' trial the court asked a total of 1,210 questions of the witnesses both during direct and cross-examination. Moreover, on occasions the questions tended to ridicule the defendant and his witnesses and to infer the court believed defendant was guilty.

After an examination of the entire record of the trial, we are forced to the conclusion that the cumulative effect of the trial judge's constant and extensive questions of the witnesses and his occasional remarks was to destroy the required atmosphere of impartiality.

Whether the evidence offered by the government of defendant's guilt in-

dicates that he is guilty as charged is irrelevant to the separate issue whether he received a fair trial. United States v. Salazar, 2 Cir., 293 F.2d 442; Cf. Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350.

The government asserts that the prejudicial effects of any remarks which may have been made and the extensive questioning by the court were cured by proper instructions to disregard the remarks and an instruction that the jury was the sole trier of the facts. We believe, however, that these instructions, even though they were quite proper and may well have had a remedial purpose, were not sufficient to overcome the cumulative effect of prejudice resulting from the judge's occasional remarks and interrogation of the witnesses throughout the entire trial.

Accordingly, we hold the case must be reversed and a new trial ordered.

Defendant contends that a reversal is required for the additional reason that the cumulative effect of the trial court's rulings on the admissibility of certain evidence allegedly tending to show defendant's good faith was prejudicial. We have considered these rulings, both separately and from a cumulative standpoint, and are not prepared to hold that the trial court erred in this regard. Since these evidentiary problems might not again arise at a retrial, we believe it would serve no useful purpose to treat in detail the questioned rulings.

At the trial defendant was represented by court-appointed counsel, Mr. Willard S. Stafford, Madison, Wisconsin, and on this appeal by Messrs. Prentice H. Marshall and Robert E. Pfaff, Chicago, also court-appointed. We thank these members of the bar for the commendatory services which they have rendered.

Reversed and remanded for a new trial.

SCHNACKENBERG, Circuit Judge (dissenting).

With characteristic thoroughness, Judge SWYGERT has ascertained that the trial judge, during a lengthy jury trial, asked 1210 questions of witnesses. We may all agree (and we have held, in United States v. Carmel, 7 Cir., 267 F.2d 345, 350), a trial judge would ordinarily do well to forego such intrusion, and where, as in Carmel, 347, we are convinced that all of the evidence in the record presents *a close case* to the jury for decision, we will reverse a conviction and remand for a new trial. On the other hand Judge SWYGERT relies, not only on Carmel, but upon Gomila v. United States, 5 Cir., 146 F.2d 372 (which we also considered in Carmel, 267 F.2d 350). But the Fifth Circuit limited the application of Gomila in Pasqua v. United States, 146 F.2d 522 at 523, cert. denied 325 U.S. 855, 65 S.Ct. 1183, 89 L.Ed. 1976, when it said:

"The record discloses that the trial judge from time to time would break in and interrupt questions being propounded to the witnesses both by counsel for the Government and for the defendants. This line of questioning appears throughout the trial and until the conclusion of the evidence. This practice of the court was highly improper, as it prevented an orderly trial of the case. *However, we do not find that such practice by the trial judge constitutes prejudicial error in this case.* A similar practice of the court in the case of Gomila v. United States, 5 Cir., 146 F.2d 372, recently decided, cumulated with other errors discussed therein, was held to be prejudicial. *In that case the testimony connecting the appellants with the crime charged was almost wholly that of confessed accomplices, uncorroborated. Here the testimony establishing the guilt* of the appellants is uncontradicted and of a nature to leave no room for doubt as to the guilt of appellants. *Under such condition, the error of the trial judge was not prejudicial. * * *"* (Italics supplied.)

This distinction applies forcibly to the case at bar. The jury had before it the evidence of 26 witnesses for the govern-

ment—18 of whom confided in defendant's representations of fact and invested their savings with him—as well as 6 disinterested executives and agents of nationally-known corporations, all of which testimony clearly branded as false defendant's representations to the persons whose monies he thereby obtained.

It is clear that this is not a close case, as was Carmel. It is also clear that this is a case which falls within the ruling of the Fifth Circuit in Pasqua, which said that the testimony was of a nature to leave no room for doubt as to the defendant's guilt, causing that appeals court to hold that the intrusion of the trial court at the trial was not prejudicial. I agree with the language used by the Fifth Circuit in Pasqua, 146 F.2d at 524, that the guilt of the defendant "is so overwhelmingly shown by the record that we think the administration of justice does not require us to take notice of such errors."

I would affirm.