**UNITED STATES of America, Plaintiff-Appellee,**

v.

**S. Montague STONE, Defendant-Appellant.**

**No. 29101**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 1, 1970.

Rehearing Denied Oct. 21, 1970.

---

* ▇ Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I.

S. Montague Stone, pro se; Alan E. Weinstein, James J. Hogan, Cohen & Hogan, Miami Beach, Fla., for defendant-appellant.

William A. Daniel, Jr., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Joseph M. Howard, Richard B. Buhrman, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee; Robert W. Rust, U. S. Atty., Lloyd G. Bates, Asst. U. S. Atty., of counsel.

Before JOHN R. BROWN, Chief Judge, MORGAN and INGRAHAM, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Dr. Stone was convicted in a jury trial on three counts of willfully attempting to evade his income tax for the years 1962–1964.[1] Appellant here urges his conviction be reversed because [i] the evidence of willful tax evasion is insufficient to support the verdict; [ii] the Judge committed plain error by asking Appellant a question that manifested the Court's belief in his guilt; and [iii] the District Court committed plain error in failing to give the defensive instruction that if Appellant reasonably and in good faith had relied upon his accountants to prepare accurate income tax returns, he could not be convicted for the willful evasion of taxes. We find these contentions to be without merit and affirm the conviction.

I. Background

Dr. Stone had been practicing medicine in Miami, Florida for approximately 18 years prior to his indictment in 1969. During that time his tax returns were personally prepared by Irving Weiner, a Certified Public Accountant, or by one of Weiner's employees. The accountants determined Dr. Stone's taxable income from daily log books reflecting the taxable income acquired from his medical practice, monthly bank statements, cancelled checks and check stubs, and from interest income recorded in his savings account passbooks. On cross-examination the Doctor admitted destroying all those materials from which the Government could have determined the amount of taxable income he had received during the years 1962–1964, including the worksheets prepared by his accountants in 1963 and 1964.[2] Fortuitously the accountants retained their worksheets for the year 1962.

Because documentation was so scarce, this was a classic case for using the net worth-expenditures method of proof. See Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. Appellant does not seriously question that the Government established that his net worth increased $36,464.26 in 1962, $20,419.37 in 1963, and $27,306.76 in 1964, and that his personal non-deducti-

---

1. The statute violated is 26 U.S.C.A. § 7201 (1967):
   "Attempt to evade or defeat tax
   "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

2. It was customary for Mr. Weiner to give the worksheets compiled during the income tax computation to the Doctor, rather than to retain them in his own records.

ble expenditures were $11,224.29 in 1962, $14,076.01 in 1963, and $17,579.23 in 1964.[3]

## II. Sufficiency Of The Evidence Of Willful Evasion

■■ In the prosecution of a § 7201 violation the Government establishes a prima facie case by showing a deficiency in the defendant's tax return plus a willful, affirmative act by the accused constituting an evasion or attempted evasion of the tax owed. Sansone v. United States, 1965, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882; Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

Appellant does not really dispute the deficiencies in his tax returns for the years 1962–1964, but argues vigorously that the Government conspicuously failed to prove a willful attempt to evade payment of those taxes. He contends that willfulness cannot be inferred from the mere understatement of income but must be shown by independent proof. Whatever validity this might have as a single, sole element,[4] the record here reflects a number of factors which *Spies, supra,* holds may warrant the inference of willfulness. An "affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes." 317 U.S. 492, 499, 63 S.Ct. 364, 368. Here the Government has established that during the years 1962–1964 Appellant followed a persistent pattern of under-reporting large amounts of income,[5] a failure to enter all of his income in his books and records,[6] a deliberate destruction of his books and records, and his habit of personally cashing patients' checks and depositing the cash rather than the checks, which allowed him to avoid entry of those payments in his books. Collectively this was quite ample.

## III. Good Faith Reliance On Accountant

■ Appellant argues further that he placed total, good faith reliance upon a competent CPA to compute his tax returns accurately, and the deficiencies were the result of the accountant's negligence. This contention goes both to the sufficiency of the evidence and to the attack on the Court's jury charge. The credibility of this contention was

---

3. Based upon those figures it was further established that Appellant's true income and resulting tax liability compared with the figures reported on the returns were as follows:

| Count No. | Year | Taxable Income | | Income Tax | |
|---|---|---|---|---|---|
| | | Reported | Corrected | Reported | Corrected |
| 1 | 1962 | $ 5,833.37 | $ 48,623.94 | $1,041.49 | $19,326.27 |
| 2 | 1963 | 11,300.43 | 29,082.07 | 2,241.87 | 8,732.33 |
| 3 | 1964 | 24,331.50 | 39,541.71 | 5,217.33 | 12,581.61 |
| Totals | | $41,465.30 | $117,247.72 | $8,500.69 | $40,640.21 |

---

4. See Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

5. See table, note 4, *supra.*

6. For example, as shown by his accountant's worksheets for 1962, based upon the Doctor's log book for that year, Appellant reported his total receipts for February to be $2,256.00. However, the prosecution proved that on February 16, 1962 Dr. Stone received a check for $2,815.00 that clearly was not included in the $2,256.00 total monthly income recorded in the log book for February 1962.

purely a question of fact for the jury, who decided it adversely to Dr. Stone. Based upon a thorough review of the record we are in accord with their finding.

It just may be that this defense was the worst one the Doctor could have asserted. For it established that whatever the accountants had they obtained from the Defendant. And what he furnished turned out to be spectacularly wrong.

Mr. Weiner, Appellant's accountant for over 15 years, testified that he had computed Dr. Stone's account during each of those years, including 1962–1964. He personally made an annual visit to Dr. Stone's office to obtain all of his sources of taxable income, and relied completely upon the Doctor or his wife to supply him with a comprehensive register of the taxable income. Mr. Weiner would then take this material to his office where either he or his employees would compute the Doctor's returns. Once this was finished he returned both the records and his worksheets to the Doctor. Mr. Weiner inadvertently retained possession of his worksheets for 1962. Those worksheets reveal that Dr. Stone had reported only $5,800.00 in taxable income for 1962. The reconstructed records show that in that same year the Doctor made life insurance payments of $5,900.00, increased his bank deposit nearly $25,000.00, and had personal expenditures alone of $11,000.-00.

The accountant's employees similarly testified that any tax returns they computed were based upon *all* of the Doctor's taxable income, the source of such information being the Doctor himself. It rounds this out to state that the effort

to put the blame on others—a tactic with built-in hazards—was not accepted by the jury.[7]

IV. Failure To Instruct On Defensive Theory

■■ In his final contention Appellant argues it was "plain error" for the District Court to fail to submit the following charge to the jury:

"If you find that the defendant had discussed this matter with competent tax counsel and that the tax return herein was prepared pursuant to that advice, then you must find that the defendant did not willfully file a false return or make a false statement, and you should bring in a verdict of not guilty."

This too is a pure afterthought since no request was made and in response to a specific inquiry by the Judge concerning any omissions in his charge defense counsel answered in the negative.

By his failure to seasonably object to the deletion of this defensive charge "before the jury retire[d] to consider its verdict", Appellant waived any complaint he may have validly presented. F.R.Civ. P. 30. Nor is the Doctor saved by the redeeming reaches of Rule 52(b), F.R. Civ.P. It does not reach the status of plain error, if it was error at all. The if is a big one since the instruction now proposed, never requested and never objected to, is full of holes—the most notable being that nothing is required under it save discussion with a tax advisor, with not even the slightest requirement of full, fair disclosure by taxpayer.[8] Next, in considering the charge as a whole, the substance of the correct defensive theory was given.[9] Certainly this is true in the context of plain error.

---

7. The Doctor's credibility on this matter may well have been weakened by the similar attack and accusations be made against his secretary of many years.

8. Appellant cites Bursten v. United States, 5 Cir., 1968, 395 F.2d 976, which reversed for failure to give a substantively correct instruction on good faith reliance. This was against the background of the

trial Judge's basic conclusion that no such charge in any form was permissible. We were careful to point out some deficiencies including full disclosure.

9. The charge over and over again emphasized the Government's burden to prove a willful intent to evade taxes. In the light of the evidence, the counsels' jury arguments and the charge which included

## V. Interrogation Of Defendant

During Dr. Stone's cross-examination he was asked the following questions:

"Q. Let's take the year 1962. Do you remember back in 1962 when you signed Government's Exhibit 1–A, that it purported to show roughly $5800 taxable income? Do you remember that at that time, sir?

A. Yes, sir.

Q. I am talking about at the time you signed your name to it.

THE COURT:

He said he remembered it.

BY MR. DANIEL:

Q. When you signed your name, did you have reason to believe that you had in fact earned more than $5800 during that year?

A. I received a printed instruction. I repeat that I received a printed instruction from Mr. Weiner, who sent in this and said, 'Doctor Stone, please sign on the dotted line and send the Government X number of dollars, and here is my bill.'

THE COURT:

*Actually, though you knew that you received pretty near ten times that amount?* (emphasis ours).

the following, it is clear the jury sensed the significance of the theory of good faith reliance on his accountants:

"A defendant is not willfully evading a tax if all that is shown is that he is careless about keeping his books. He is not willfully evading a tax if all that is shown is that he failed to hire competent bookkeepers or accountants. It must be shown that he willfully performed acts with intent to defraud the Government, to deceive them, in order to cheat the Government from the proper tax which was due from him.

Now, the accused is charged here that he did willfully seek to defraud the Government on income tax returns for these three years, and you have heard the evidence on that. As a part of that, it must be established beyond a reasonable doubt that he did things that he should not have done contrary to law in order to defraud the Government of the proper taxes. It must be established that he did those acts willfully, that he did them knowingly, with bad heart and with bad intent. It means having the purpose on his part to cheat or defraud the Government. It is not enough if all that is shown is that the defendant was stubborn or stupid, careless, negligent, or grossly negligent. A defendant is not willfully evading a tax if all that is shown is that he is careless about keeping his books. He is not willfully evading a tax if all that is shown is that he failed to hire competent bookkeepers or accounts. It must be shown that he willfully performed acts with intent to defraud the Government, to deceive them, in order to cheat the Government from the proper taxes which were due from him.

To attempt to evade or defeat the taxes involves two things: first, an intent to evade or defeat the tax or a substantial amount; and second, a willful act intentionally done in furtherance of such intent. So the word "attempt" contemplates that the accused had knowledge and understanding that during the calendar year in question he had an income which was taxable, and which he was required by law to report, but that he nevertheless attempted to evade or defeat the tax thereof, or a substantial portion thereof, by willfully failing to report all the income which he knew he had during the calendar year in question, in which he knew it was his duty under the law to state in his return for such year, and that he did that in some way or manner intending to defeat the Goverment or evade the payment of the taxes. Various schemes and subterfuges and devices may be resorted to in an attempt to evade taxes * * * *

If a person in good faith believes that he paid all the taxes he owes, he cannot be guilty of criminal intent to evade the tax. But if the person acted without reasonable grounds for belief that his conduct was lawful, then it is for the jury to decide whether he was acting in good faith or whether he willfully intended to evade the taxes.

This issue of intent—and if you find the defendant willfully evaded the taxes —is one for the jury to determine. The jury must determine that from a consideration of all the evidence in the case, bearing upon the mind of the accused."

THE WITNESS:

Perhaps I did receive more than that. I don't know how much more, your Honor."

Appellant contends that the question interposed by the Court constitutes "plain error affecting the substantial rights" of the Doctor because "the trial Court in effect accused the defendant of being guilty of willful income tax evasion [and although] no objection was made to the accusation * * * none was necessary since it utterly destroyed the defense in the case and deprived the defendant of a fair trial."

Thus the issue to be resolved is whether the District Judge contravened the revered constitutional line between a fair trial by jury, and a trial uninfluenced by comments or opinions of the trial Judge indicating his belief in the accused's guilt.

We are perfectly clear that this sole question asked by the Judge did not "[c]ut into the presumption of innocence to which [defendant was] entitled". United States v. Brandt, 2 Cir., 1952, 195 F.2d 653. Although a trial judge in a federal criminal trial may not ask questions or make comments that indicate, directly, or indirectly, the defendant's guilt,[10] the Court nevertheless, in the aid of truth and the furtherance of justice, may question a witness. Gomila v. United States, 5 Cir., 1944, 146 F.2d 372.

In this instance the defendant had evaded the prosecutor's question and the Court merely sought a responsive answer. The proof is once again the puddings eating, for counsel made no objection, motion for a mistrial, or for other Court instruction to the jury. Now, as an afterthought, he vigorously asserts what was not clear to anyone present—that the single question asked by the trial Judge convinced the jurors of his belief in the defendant's guilt. Viewing the record as a whole we are unable to discern any prejudice arising from the question nor anything about it which would indicate to the jury that the Judge was "[i]nterested in the case on the side of the prosecution." Blumberg v. United States, 5 Cir., 1955, 222 F.2d 496.[11]

Affirmed.

10. See, e. g., Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; United States v. Hill, 7 Cir., 1964, 332 F.2d 105; United States v. DeSisto, 2 Cir., 1961, 289 F.2d 833; Holmes v. United States, 4 Cir., 1959, 271 F.2d 635; United States v. Carmel, 7 Cir., 1959, 267 F.2d 345; Blunt v. United States, 1957, 100 U.S.App.D.C. 266, 244 F.2d 355; Blumberg v. United States, 5 Cir., 1955, 222 F.2d 496; Zebouni v. United States, 5 Cir., 1955, 226 F.2d 826.

11. Appellant cites numerous cases in support of his position. None compel reversal here: Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; United States v. Fry, 7 Cir., 1962, 304 F.2d 296; Gomila v. United States, 5 Cir., 1944, 146 F.2d 372; Adler v. United States, 5 Cir., 1910, 182 F. 464; Zebouni v. United States, 5 Cir., 1955, 226 F.2d 826. Further, counsel in the cases cited by appellant made immediate objections to the questions or behavior of the Judges. This indicates that the prejudice emanating from the questions or behavior was so flagrant that it could not have gone unnoticed by the jurors. However, the record in this case discloses a salient absence of an objection to the question at the time it was asked, or a subsequent request by counsel for an instruction by the Court. This reinforces our view that the question was not "devastating" to the defense, nor influential on the jury in its decision and return of a verdict of guilty. Accordingly, we find Appellant's second contention completely lacking in merit.