S. MONTAGUE STONE and LEE STONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stone v. Commissioner
Docket No. 2234-74.
United States Tax Court
T.C. Memo 1977-147; 1977 Tax Ct. Memo LEXIS 294; 36 T.C.M. (CCH) 621; T.C.M. (RIA) 770147; May 16, 1977, Filed *294 P, a physician, grossly understated his income for 8 consecutive years. Held: (1) Some part of the underpayment for each of the years at issue was due to fraud with intent to evade tax within the meaning of sec. 6653(b), I.R.C. 1954; (2) the Commissioner has failed to prove that P's wife is liable under sec. 6653(b) for the fraud penalties; and (3) P's wife has not shown that under sec. 6013(e)(1), I.R.C. 1954, she is entitled to be relieved of liability for the deficiencies. Albert D. Greenfield, for the petitioners. Curtis O. Liles, III, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes for the taxable years 1958 through 1965: Sec. 6653(b) [1] Year
Deficiency
Addition to Tax
1958
$18,102.00
$ 9,051.17
1959
10,655.33
5,327.67
1960
5,570.87
2,785.44
1961
25,681.64
12,840.82
1962
25,129.77
12,564.89
1963
12,173.01
6,086.51
1964
11,797.45
5,898.73
1965
7,718.14
3,859.07
Although in their petition they alleged that the Commissioner had erred in determining that *295 there were deficiencies in tax, the petitioners stipulated to all but three items involved in the Commissioner's reconstruction of income and failed to produce any evidence at trial regarding those three items; accordingly, we find they have abandoned their assignment of error with respect to the deficiencies. The issues remaining for decision are: (1) Whether any part of the underpayment of taxes for each of the years 1958 through 1965 was due to fraud with intent to evade tax within the meaning of section 6653(b); (2) whether the petitioner Lee Stone is entitled to relief from liability for the deficiencies under the "innocent spouse" provisions of section 6013(e); and (3) whether the assessment of deficiencies in income taxes and additions thereto is barred by the statute of limitations. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found.
The petitioners, S. Montague Stone and Lee Stone, husband and wife, resided in Miami Beach, Fla., at the time they filed their petition in this case. For each of the taxable years 1958 through 1964, they filed joint Federal income tax returns with the District Director of Internal Revenue, Jacksonville, Fla. *296 They filed their joint Federal income tax return for 1965 with the District Director of Internal Revenue, Los Angeles, Calif.
The petitioner, S. Montague Stone, is a medical doctor. He commenced the practice of medicine in Miami Beach, Fla., in 1951 and continued his practice there until 1965. In 1965, Dr. Stone retired from medical practice and moved to California; however, in 1966, he returned to Miami Beach, where he reopened his practice. He continued practicing medicine in Miami Beach until his retirement on August 1, 1975. During the years at issue, Dr. Stone employed a full-time nurse to assist him in his practice; her responsibilities included maintaining patient records, both medical and financial. She initially was employed by Dr. Stone in about 1953 and continued in his employ until 1965, when he retired and moved to California. She died in 1966. Dr. Stone's office was arranged so that all patients passed by the nurse's desk on their way to see the doctor and upon departure. The nurse greeted patients and announced their arrival to the doctor; after examination or treatment, patients were escorted by Dr. Stone back to the nurse's desk. The nurse was responsible *297 for recording the necessary information regarding the visit, including the fee charged and paid, on the patients' record cards and in the doctor's daily log book; she also arranged for any required followup appointments. Although some fees were paid to the nurse, other fees were paid directly to Dr. Stone. In the latter case, the nurse recorded in the daily log book whatever fee Dr. Stone told her had been charged and received. A substantial portion of the gross receipts was not recorded in the daily log book. Throughout the years at issue, the petitioners maintained a joint checking account at the Miami Beach First National Bank. The amounts deposited to such account and the gross receipts reported on the schedule C of their joint Federal income tax returns for each of the years 1958 through 1965 were as follows: Year
Bank Deposits
Schedule C
1958
$30,824.30
$ 30,998.00
1959
26,104.60
30,154.50
1960
22,026.26
19,112.00
1961
31,634.73
24,478.76
1962
23,363.52 a *298 25,678.00
1963
34,197.68
33,981.80
1964
46,023.95
46,183.71
1965
15,429.41 b
15,370.60 All of the fees received by Dr. Stone were not deposited in the petitioners' joint checking account; substantial deposits also were made to joint savings accounts maintained at various financial institutions. In making such deposits in the savings accounts, Dr. Stone did not list each check separately on the deposit slip; instead, he negotiated checks received from patients for medical fees, and then deposited the currency received. As of the end of each of the years 1957 through 1965, the petitioners had on deposit in joint savings accounts at least the following amounts: Year
Balance
1957
$ 35,355.82
1958
39,537.91
1959
54,154.16
1960
64,197.70
1961
63,743.12
1962
89,616.21
1963
98,823.53
1964
106,778.16
1965
107,649.24 Despite such savings accounts, the petitioners failed to report any interest income on their joint returns for the years 1957 through 1961; however, they did report interest income for the years 1962 through 1965. Dr. *299 Stone employed a certified public accountant to prepare joint Federal income tax returns for him and his wife during most of the years at issue. The returns for each of the years 1958 through 1964 were prepared either by the accountant personally or by one of his employees under his supervision. [2] The accountant's professional relationship with Dr. Stone began in about 1953, and he prepared the petitioners' tax returns for several years prior to the years at issue; however, he was not employed to audit Dr. Stone's books and records. The accountant recommended that he be employed to keep the books and records on a monthly basis for Dr. Stone, and although he was employed to do so at one time, Dr. Stone terminated such employment after a few months. At the appropriate time each year, the accountant or one of his employees went to Dr. Stone's office to pick up the records needed to prepare the petitioners' income tax returns. At such time, Dr. Stone turned over to the accountant, or his employee, his cancelled checks, check stubs, *300 monthly checking account statements, and daily log book. Such records were taken back to the accountant's office and were used in the preparation of the petitioners' Federal income tax returns. However, Dr. Stone refused to allow his savings passbooks to be taken from his office. The accountant advised Dr. Stone that the accountant should be given such records as to reflect all receipts, expenses, and other information necessary to prepare a complete and accurate Federal income tax return, and he relied upon Dr. Stone to provide him with such records. Dr. Stone led the accountant to believe that all gross receipts from his medical practice were reflected in the daily log book; consequently, the accountant used only information contained in that book in calculating the gross receipts reported on schedule C of each return, and did not attempt to examine or analyze the savings accounts deposits. In preparing the petitioners' returns, he considered that his only duty with respect to their savings accounts was to ascertain and include interest income derived therefrom. The petitioner Lee Stone was a housewife and mother throughout the years at issue. Although she occasionally worked *301 in her husband's office to relieve the nurse, she did not work there on a regular basis or for substantial periods of time. Mrs. Stone's formal education was very limited; she married at an early age and, except for occassionally substituting for the nurse in her husband's office, was never employed outside of her home. Although Mrs. Stone received from her husband a daily household allowance to take care of everyday expenses, Dr. Stone paid all of the major household expenses by check. Mrs. Stone was a highly nervous woman who suffered from a variety of physical and emotional problems during the years at issue. Upon his retirement from medical practice in 1965, Dr. Stone destroyed all of the records relating to his practice, including all financial records, both business and personal. In the absence of books and records, the Commissioner reconstructed the petitioners' taxable income for the years 1958 through 1965 using the net worth increase plus nondeductible personal expenditures method. For each of the years ending December 31, 1957, through December 31, 1965, the petitioners had a net worth, and an increase over the prior year's net worth, as set forth below: Year
Net Worth
Increase
1957
$ 95,864.10
1958
124,314.01
$ 28,449.91
1959
144,862.52
20,548.51
1960
152,663.82
7,801.30
1961
196,227.27
43,563.45
1962
235,384.90
39,157.63
1963
257,043.02
21,658.12
1964
278,571.38
21,528.36
1965
259,366.34
(19,205.04)
*302 For each of the years 1958 through 1965, the amounts reported as adjusted gross income on the petitioners' Federal income tax returns, compared to their actual personal living expenditures, were as follows: Adjusted Gross Income
Personal Living Year
Per Return
Expenditures
1958
$13,375.52
$24,943.26
1959
11,632.39
17,749.35
1960
3,638.26
17,535.21
1961
5,206.76
19,510.97 a
1962
9,073.61
18,260.33
1963
15,504.74
19,123.60
1964
28,465.38
22,542.15
1965
1,919.66
24,892.90
Except for amounts taken into consideration by the Commissioner, the petitioners did not have any undeposited cash at the end of the taxable years 1957 through 1965, nor did they receive any money or other property from gifts, inheritance, or other nontaxable sources during the years at issue. After considering the increase in net worth, personal living expenditures, miscellaneous adjustments to gross income, and exemptions and deductions, the petitioners' correct taxable income, the taxable income reported on the returns, and the amounts by which taxable *303 income was understated were as follows: Taxable Income
Correct Year
Per Return
Taxable Income
Understatement
1958
$ 9,975.52
$49,993,17
$40,017.65
1959
8,232.39
35,991.50
27,759.11
1960
1,474.43
21,536.51
20,062 .08
1961
2,886.08
59,707.84
56,821.76
1962
5,833.37
59,827.59
53,994.22
1963
11,300.43
40,341.29
29,040.86
1964
24,331.50
47,884.84
23,553.34
1965
(72.31)
27,594.73
27,666.04
On March 20, 1969, a grand jury indicted Dr. Stone under section 7201 on three counts of willfully and knowingly attempting to evade and defeat a large part of the Federal income taxes due and owing by him and his wife by filing false and fraudulent income tax returns for 1962, 1963, and 1964. On August 13, 1969, he was found guilty as to all three counts of the indictment after a trial on the merits before a jury in the U.S. District Court for the Southern District of Florida (an unreported case). Such conviction subsequently was upheld by the Court of Appeals for the Fifth Circuit. United States v. Stone,431 F. 2d 1286 (1970), cert. denied 401 U.S. 912 (1971). OPINION Issue 1. Fraud
The first issue we must decide is whether a part of the underpayment of taxes due from the petitioners for each of the years 1958 through 1965 was due *304 to fraud with intent to evade tax within the meaning of section 6653(b). The Commissioner has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Webb v. Commissioner,394 F. 2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969); Imburgia v. Commissioner,22 T.C. 1002, 1014 (1954); Petit v. Commissioner,10 T.C. 1002, 1014 (1954); Petit v. Commissioner,10 T.C. 1253, 1257 (1948). To prove fraud, it must be shown that the taxpayer intended to evade taxes which he knew or believed to be owing. Webb v. Commissioner,supra;Cefalu v. Commissioner,276 F. 2d 122, 128 (5th Cir. 1960), affg. a Memorandum Opinion of this Court; Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), revg. on another issue 40 B.T.A. 424 (1939). The Commissioner need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment is attributable thereto. Otsuki v. Commissioner,supra at 105. If fraud is established, the 50-percent penalty is applied, not only to that *305 portion of the underpayment which is the result of fraud, but to the entire deficiency. Sec. 6653(b), (c); Stone v. Commissioner,supra at 221. Also, where fraud is established, the tax and penalties may be assessed and collected at any time. Sec. 6501(c). In deciding whether there is fraud, we are not limited to a consideration of the Commissioner's affirmative evidence, but are entitled to consider the entire record properly before us. Imburgia v. Commissioner, supra at 1014; Petit v. Commissioner,supra at 1257. Although the Commissioner must show fraud by clear and convincing evidence, it is seldom possible to do so by direct proof of intention; rather, evidence of fraudulent intent is derived from an examination of the taxpayer's entire course of conduct. Proof of fraud may depend to some extent upon circumstantial evidence, and a finding of fraud, as any other finding of fact, may be based upon all the evidence of record and reasonable inferences properly drawn therefrom. Stone v. Commissioner,56 T.C. at 224; Otsuki v. Commissioner,53 T.C. at 106. The petitioners' failure to come forward with any evidence to dispute the Commissioner's determination of deficiencies for *306 the years at issue is not determinative of fraud, for a mere understatement of income does not establish fraud. Carter v. Campbell,264 F. 2d 930, 936 (5th Cir. 1959); Drieborg v. Commissioner,225 F. 2d 216, 218 (6th Cir. 1955), affg. on this issue a Memorandum Opinion of this Court. However, a consistent pattern of understatement of substantial amounts of income over a period of years is persuasive evidence of a fraudulent intent to evade tax. Holland v. United States,348 U.S. 121, 139 (1954); United States v. Burrell,505 F. 2d 904, 911-912 (5th Cir. 1974); Estate of Upshaw v. Commissioner,416 F. 2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court, cert. denied 397 U.S. 962 (1970); Webb v. Commissioner,394 F. 2d at 378-379; Kramer v. Commissioner,389 F. 2d 236, 239 (7th Cir. 1968), affg. a Memorandum Opinion of this Court; Escobar v. United States,388 F. 2d 661, 666 (5th Cir. 1967), cert. denied 390 U.S. 1024 (1968); Merritt v. Commissioner,301 F. 2d 484, 487 (5th Cir. 1962), affg. a Memorandum Opinion of this Court; Cefalu v. Commissioner,276 F. 2d at 129; Kurnick v. Commissioner,232 F. 2d 678, 681 (6th Cir. 1956), affg. per curiam a Memorandum Opinion *307 of this Court; Drieborg v. Commissioner,supra at 219; Stone v. Commissioner,56 T.C. at 224; Otsuki v. Commissioner,53 T.C. at 107; but cf. Goldberg v. Commissioner,239 F. 2d 316, 320-321 (5th Cir. 1956), revg. a Memorandum Opinion of this Court. The taxpayer's failure to maintain accurate books and records may also constitute significant evidence of fraud. Merritt v. Commissioner,supra at 487; Otsuki v. Commissioner,supra at 110. In addition, willful destruction of books and records has been held to be indicative of fraudulent intent to evade tax. Spies v. United States,317 U.S. 492, 499 (1943). Having carefully analyzed all of the evidence in this case in light of such principles, we are convinced that Dr. Stone received from his medical practice taxable income substantially in excess of that reported on the petitioners' joint returns for each of the years 1958 through 1965, that he deliberately did not report such income, and that a part of the underpayment of tax for each year here involved was due to fraud with intent to evade tax on his part. The substantial understatements of income for the years at issue did not result, as Dr. Stone contends, from the defalcations *308 of his nurse and his accountant, or from mere oversight or negligence on his part, but rather resulted from his own willful and intentional wrongdoing. The conviction of Dr. Stone for criminal tax evasion for the years 1962, 1963, and 1964 collaterally estops him from denying his fraud for those years in this case and so establishes his fraud for such years beyond dispute. Stone v. Commissioner,56 T.C. at 221. In addition, there is ample evidence in this record to establish his fraud, not only for those years, but also for the other years at issue. For the years at issue, the petitioners reported total taxable income of $63,961.41, whereas in fact they had taxable income of $342,877.47; thus, only 18.7 percent of the petitioners' total taxable income was reported on their returns. The understatements for each of the years here involved were substantial, both in amount and in relation to taxable income reported in the returns. Otsuki v. Commissioner,$3 53 T.C. at 108. Such substantial under-reporting of income was due primarily to gross understatement of receipts from Dr. Stone's medical practice. In the absence of a satisfactory explanation, such substantial understatement of *309 income, repeated year after year, is in and of itself strongly indicative of fraudulent intent to evade tax. Estate of Upshaw v. Commissioner,416 F. 2d at 741; Kramer v. Commissioner,389 F. 2d at 239; Stone v. Commissioner,56 T.C. at 225. However, we need not rely upon this factor alone, for there are other significant indicia of fraud. During each of the years at issue, Dr. Stone failed to maintain accurate records of receipts from his medical practice. Although he testified in this case that all of the fees received by him were recorded in the daily log book, he admitted in the criminal case that not all the fees were so recorded.On the basis of the record before us, it is clear that only a portion of the fees received were recorded in the log book. We find his testimony in the criminal case to be more credible than that given to us, for it appears that he would not have made such damaging admissions unless he believed them to be true. Fed. R. Evid. 801(d)(1), (2). Moreover, it is clear that large amounts of income were not reported each year, and the most likely explanation seems to be that not all of the receipts were reported in the log book. The Commissioner suggested *310 that the only fees which were recorded in the log book were those which were deposited in the petitioners' joint checking account at the Miami Beach First National Bank. For the years 1958 through 1965, deposits to that checking account totaled $229,604.45, while gross receipts reported on schedule C of the petitioners' joint returns for the same years totaled $225,957.37. We agree with the Commissioner that the most reasonable inference to be drawn from these facts is that only those fees which were deposited to the business checking account were recorded in the daily log book.The remainder of the fees was deposited to joint savings accounts and was neither recorded in the log book nor reported on the petitioners' Federal income tax returns for the years in question. Under the circumstances, the inadequacy of Dr. Stone's records is indicative of fraud. Merritt v. Commissioner,301 F. 2d at 487; Otsuki v. Commissioner,53 T.C. at 110. Dr. Stone's intentional destruction of his books and records also is indicative of fraudulent intent to evade tax. Spies v. United States,317 U.S. at 499. Dr. Stone testified that in 1965 he was diagnosed as terminally ill with cancer of the skin, *311 that due to his illness he was forced to retire from medical practice, and that he moved to California to be with his children during his final days. However, no evidence was offered to corroborate Dr. Stone's statement that he was diagnosed as terminally ill in 1965, and the fact that less than one year later he returned to Florida where he reopened his practice, and continued practicing medicine until August of 1975, casts doubt upon his testimony. Moreover, while we understand that medical ethics might dictate that patients' medical records be returned to them or otherwise properly disposed of upon a doctor's retirement from practice, we do not understand why Dr. Stone's retirement, and subsequent move to California, necessitated the destruction of all financial records, both business and personal. We cannot accept Dr. Stone's explanation for his actions, and find his intentional destruction of his books and records to be further evidence of fraud. Dr. Stone has attempted to explain the substantial under-reporting of receipts from his practice by accusations of negligence on the part of his accountant. He argued that his daily log book and his savings accounts passbooks together *312 formed an accurate record of receipts from his practice and that the accountant should have used information derived from both sources in calculating gross receipts from the medical practice. Indeed, Dr. Stone called as an expert witness his brother-in-law, who testified that the accountant who prepared the returns for the years 1958 through 1964 was "grossly negligent." However, we cannot accept such contentions. The accountant who prepared the returns for all of the years at issue except 1965 testified that Dr. Stone led him to believe that all receipts were recorded in the daily log book, and we have accepted such testimony. Moreover, Dr. Stone testified that he did not allow the savings passbooks to be taken from his office; thus, the accountant had neither reason nor opportunity for a detailed examination of the savings accounts. If he looked at the passbooks at all, it was only to ascertain the amount of interest earned during the year and reportable on the petitioners' returns. The returns for the years at issue reveal that no interest income was reported until 1962, which was the year of the enactment of more extensive requirements for reporting by banks and other financial *313 institutions of interest earned during the year. For the later years, the accountant used the Forms 1099 to ascertain the amount of reportable interest. These facts create considerable doubt as to whether the accountant ever examined the savings accounts passbooks at all. Dr. Stone also has argued that his accountant should have extrapolated, from the interest reported on the returns for the years 1962 through 1964, the amounts on deposit in various savings institutions, concluded from such calculations that not all the receipts from the medical practice were included in the daily log book, and thereafter should have embarked upon a more thorough investigation of the savings accounts deposits. The circumstances are such that they perhaps should have aroused the accountant's suspicions. On the other hand, from the accountant's viewpoint, such increases in savings could have been due to some nontaxable source, such as inheritance, gifts, or repayment of loans. In this regard, we also note that Dr. Stone's practice of negotiating patients' checks and depositing the currency received, rather than listing the checks on the deposit slips, concealed the source of the monies deposited.In *314 any event, the adequacy of the accountant's services is not in issue. United States v. Schechter,475 F. 2d 1099, 1101 (5th Cir. 1973), cert. denied 414 U.S. 825 (1973); Blumberg v. United States,222 F. 2d 496, 499 (5th Cir. 1955). In view of the misleading nature of the information which Dr. Stone furnished his accountant regarding the receipts from his medical practice, Dr. Stone cannot be excused from his fraudulent conduct by the alleged shortcomings of his accountant. Compare Davis v. Commissioner,184 F. 2d 86 (10th Cir. 1950), remg. a Memorandum Opinion of this Court. Dr. Stone also sought to excuse the gross understatements of receipts from his practice by accusations of negligence on the part of his nurse. As the nurse died in 1966, we did not have the benefit of her testimony, which undoubtedly would have been of great value to us in deciding this case.However, at the criminal trial, Dr. Stone admitted that some fees from patients were not handed to the nurse for recording and depositing. Thus, we have found that as to those fees, she could record only what Dr. Stone disclosed to her. Under such circumstances, the failure to report all gross receipts cannot be attributed *315 to the nurse. Finally, Dr. Stone asserts that the Commissioner has not come forward with any evidence regarding the preparation of the 1965 return, and that accordingly, he has failed to sustain his burden of proof for that year. The return for 1965 was not prepared by the same accountant who prepared the returns for the rest of the years at issue, but by another accountant, who was not called to testify in this case. However, for 1965, the petitioners reported no taxable income, when in fact they had taxable income of $27,594.73; thus, the pattern of consistent understatement of income was repeated for that year. The record establishes a course of conduct which was the same for each of the other years at issue, and we are convinced that Dr. Stone did not deviate from that course during 1965. Accordingly, we find that for each of the years at issue, some part of the underpayment was due to fraud on his part. Stone v. Commissioner,56 T.C. at 226. Under section 6653(b), Mrs. Stone is not liable for the fraud penalty, unless it is shown that part of the underpayment for each of the years at issue was due to fraud on her part. Fraud may never be imputed or presumed, but must be *316 affirmatively proved. Stone v. Commissioner,supra at 224. In support of his assertion that Mrs. Stone is liable for the fraud penalty, the Commissioner argues that she functioned in effect as an office manager for her husband, and was therefore fully aware of the financial aspects of his practice. However, on the basis of the record before us, we are not convinced that she was at his office at more than irregular intervals, or that she was knowledgeable concerning his financial affairs. At the criminal trial, there was evidence that Mrs. Stone made some of the deposits in the savings accounts, but such deposits covered only a few of the deposits made during the years at issue and were insufficient to establish a pattern of conduct. Although there was some testimony that she regularly participated in the operations of Dr. Stone's office, such testimony failed to convince us that she was aware of his financial affairs. In further support of his argument, the Commissioner points out that for the 8 years at issue, the petitioners had personal living expenditures of $164,557.77, whereas on their Federal income tax returns for the same years, they reported adjusted gross income of *317 only $88,816.32. He argues that on the basis of this consistent pattern of expenditures in excess of reported income, the Court should infer fraud on the part of Mrs. Stone. However, the record shows that all major living expenses were paid by Dr. Stone, and the Commissioner has not shown that Mrs. Stone knew the total amount expended each year. Bearing in mind that "[the] fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing" ( Mitchell v. Commissioner,118 F. 2d at 310), we find that the Commissioner has failed to prove by clear and convincing evidence that Mrs. Stone committed fraud. Accordingly, she is not liable for the fraud penalties. Issue 2. Statute of Limitations
The petitioners contend that assessment and collection of the deficiencies is barred by the statute of limitations. However, under section 6501(c), the tax and penalties may be assessed at any time where there is fraud. As we have found that on the basis of the evidence of record, a part of the underpayment for each taxable year involved was due to fraud with intent to evade tax on the part of Dr. Stone, the statute of limitations *318 does not bar the assessment and collection of the tax. Even though the fraud was that of the husband alone, it prevents the running of the statute of limitations as to the wife, so that she also remains liable for the deficiencies. Stone v. Commissioner,56 T.C. 213, 228 (1971); Rodney v. Commissioner,53 T.C. 287, 311 (1969). Issue 3. Innocent Spouse
Finally, we must decide whether, pursuant to the provisions of section 6013(e)(1), Mrs. Stone is entitled to relief from liability for the deficiencies. Such section provides: (e) Spouse Relieved of Liability in Certain Cases-- (1) In general.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefitted directly or indirectly *319 from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.
The petitioner has the burden of proving that she satisfies all three conditions for each of the years at issue. Rule 142, Tax Court Rules of Practice and Procedure; Galliher v. Commissioner,62 T.C. 760, 761 (1974), affd. without published opinion 512 F. 2d 1404 (5th Cir. 1975); Quinn v. Commissioner,62 T.C. 223, 229-230 (1974), affd. 524 F. 2d 617 (7th Cir. 1975); Sonnenborn v. Commissioner,$3 57 T.C. 373, 380-381 (1971). Since we have concluded that she has not satisfied the last of such conditions, we need not resolve the controversy between the parties as to whether she satisfies the other two conditions. In order to satisfy section 6013(e)(1)(C), the third condition to relief as an innocent spouse, Mrs. Stone must demonstrate that taking *320 into account whether she significantly benefitted from the items omitted from gross income, and taking into account all other facts and circumstances, it would be inequitable to hold her liable for the deficiencies. Mrs. Stone argued, and the Commissioner agreed, that there were no unusual or lavish expenditures from which she benefitted during the years at issue. However, the omitted income was not spent or squandered by her husband, but rather was deposited to joint savings accounts. Compare Mysse v. Commissioner,57 T.C. 680, 699 (1972). Transfers of property, even if received several years after the year in which the omitted item should have been included in gross income, may constitute a significant benefit, if such property is traceable to the omitted items. S. Rept. No. 91-1537 (1970), 1971-1 C.B. 606, 608. Mrs. Stone has not come forward with any evidence as to the disposition of the substantial sums accumulated in joint savings accounts throughout the years at issue; in fact, there is nothing in the record to indicate that such funds are not still on deposit and at Mrs. Stone's disposal. Accordingly, she has failed to demonstrate that she did not benefit significantly *321 from the omitted income. Moreover, she has not put forth any other facts and circumstances which compel us to conclude that it would be inequitable to hold her liable for the deficiencies. Therefore, we find that she has failed to satisfy the conditions of section 6013(e)(1)(C), and is not entitled to be relieved from liability for the deficiencies in tax. In conclusion, we hold that both of the petitioners are liable for the deficiencies for each of the years 1958 through 1965 as determined by the Commissioner; that Dr. Stone is liable for the fraud penalty for each of such years; and that Mrs. Stone is not liable for such fraud penalties. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.↩
a. The evidence regarding deposits for 1962 was incomplete in that records of deposits for the periods Aug. 18 through Oct. 17 and Nov. 1 through Dec. 18 were not submitted.
b. The last deposit for 1965 occurred on June 11 of that year. On June 24, the balance in the account was zero, and the account was closed. We assume the closing of this account coincides with Dr. Stone's retirement from practice and his move to California.↩
2. The 1965 return was prepared by a California public accountant. No testimony or other evidence was introduced regarding the preparation of this return.↩
a. Our addition of personal living expenditures for 1961 yielded a total of $19,511.77, but since the Commissioner has presented no claim for an increased deficiency, we have accepted his figure.↩